589 S.E.2d 48

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Gary Brian CUMMINGS, Defendant Below, Appellant.**

No. 30911.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 9, 2003.

Decided Oct. 10, 2003.

Concurring Opinion of Justice Davis Oct. 14, 2003.

Davis, J., filed concurring opinion, in which Maynard, J., joined.

318

Darrell V. McGraw, Jr., Attorney General, Jon R. Blevins, Assistant Attorney General, Charleston, West Virginia, Attorneys for the Appellee.

Frances C. Whiteman, Whiteman Burdette, PLLC, Fairmont, West Virginia, Attorney for the Appellant.

PER CURIAM:

This is an appeal by Gary Brian Cummings (hereinafter "Appellant") from a December 13, 2001, order of the Circuit Court of Marion County denying the Appellant's motion for reconsideration of a restitution order. The restitution order had been entered pursuant to the Appellant's plea of nolo contendere to one count of fraudulent schemes, one count of embezzlement, one count of forgery, and one count of uttering. The Appellant contends that the lower court erred by ordering him to pay restitution in an amount unjustified by the statute governing restitution, West Virginia Code § 61-11A-4 (1984) (Repl. Vol.2000). After thorough examination of the record and arguments of counsel, we reverse the restitution order entered by the lower court and remand for the entry of an order consistent with this opinion.

## I. Factual and Procedural History

The Appellant was employed by Dr. Patrick C. Bonasso (hereinafter "victim") as an office manager, with duties including the daily operation of the office and financial affairs of Dr. Bonasso's medical business, WomanCare, Inc. During his tenure with Dr. Bonasso, the Appellant embezzled from the medical business by stealing cash, forging checks, improperly using the company credit card, retaining the proceeds from the sale of a storage building, and granting himself an unauthorized raise. The Appellant ultimately confessed to Dr. Bonasso and was indicted for twenty-two counts of forgery, twenty-two counts of uttering, one count of embezzlement, and one count of fraudulent schemes.

On April 24, 2000, the Appellant entered into a plea agreement in which he pled nolo contendere to one count of fraudulent schemes, one count of embezzlement, one count of forgery, and one count of uttering. The Appellant further agreed to "make restitution to the victims ... upon the submission of an Affidavit of Loss and a Restitution Hearing" and agreed to "make restitution in the amount to be determined at a Restitution Hearing." Restitution hearings were conducted on July 13, 2001, September 19, 2001, and October 15, 2001. Substantial expert and factual testimony was presented by the State and the defense regarding the losses incurred by Dr. Bonasso and WomanCare, Inc. The defense did not present any evidence regarding the Appellant's financial resources.

Subsequent to a November 5, 2001, hearing, the lower court determined that the evidence supported a finding that restitution of $48,778.98 was appropriate. The following items were included: $20,776.86 for checks written by the Appellant to himself which had not been authorized by the victim; $7,013.49 for the victim's cash receipts not deposited by the Appellant; $2,339.65 for interest paid by the victim on a line of credit, an amount which would not have been necessary had the Appellant not engaged in criminal activity; $1,500.00 for money received and retained by the Appellant for the sale of the victim's utility building; $12,000.00 for income the victim lost as a result of his court appearances; $5,000.00 for accounting fees in ascertaining financial losses; $149.00 for costs charged by the bank for recreation of deposit slips. The Appellant's request for reconsideration of the lower court's restitution order was denied, and this appeal followed.

## II. Standard of Review

■ The standard of review applicable to the case *sub judice* was explained as follows in syllabus point one of *State v. Lucas*, 201 W.Va. 271, 496 S.E.2d 221 (1997):

The Supreme Court of Appeals reviews sentencing orders, including orders of restitution made in connection with a defendant's sentencing, under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands.

## III. Discussion

### A. State Concedes Error

Prior to a discussion of the controverted issues in this case, we observe initially that the State concedes that the lower court erred in assessing attorney and expert witness fees

to the Appellant and in failing to make findings of fact regarding the Appellant's ability to pay restitution. The State having conceded error on these issues, we reverse the determination of the lower court and remand this matter for further evaluation consistent with this opinion.

### B. Items Included in Restitution Order

■ The primary remaining issue for this Court's resolution is whether the lower court erred in awarding restitution based upon matters not specifically referenced in the indictment. Examination of this matter is governed by the West Virginia Victim Protection Act of 1984, West Virginia Code §§ 61–11A–1 through –8 (1984) (Repl.Vol.2000), which codifies the statutory law of this state regarding court-ordered restitution by an individual convicted of a crime. In this instance, the Appellant maintains that the following items were wrongly included in the restitution order: cash allegedly taken by the Appellant from Dr. Bonasso's office; interest paid on Dr. Bonasso's line of credit due to cash flow problems created by the Appellant's crimes; cash received by the Appellant for the sale of an outbuilding; and additional checks allegedly written by the Appellant.

■ The Appellant agreed to pay restitution as part of the plea agreement between the Appellant and the State. In syllabus point two of *Lucas,* this Court examined the parameters of a restitution order, explaining as follows:

> Read *in pari materia,* the provisions of *W.Va.Code,* 61–11A–1 [1984], *W.Va.Code,* 61–11A–4(a) [1984], *W.Va.Code,* 61–11A–4(d) [1984], *W.Va.Code,* 61–11A–5(a) [1984] and *W.Va.Code,* 61–11A–5(d) [1984], establish that at the time of a convicted criminal defendant's sentencing, a circuit court should ordinarily order the defendant to make full restitution to any victims of the crime who have suffered injuries, as defined and permitted by the statute, unless the court determines that ordering such full restitution is impractical.

201 W.Va. at 273, 496 S.E.2d at 223 (1997). Syllabus point three of *Lucas* continued:

> Under *W.Va.Code,* 61–11A–1 through –8 and the principles established in our criminal sentencing jurisprudence, the circuit court's discretion in addressing the issue of restitution to crime victims at the time of a criminal defendant's sentencing is to be guided by a presumption in favor of an award of full restitution to victims, unless the circuit court determines by a preponderance of the evidence that full restitution is impractical, after consideration of all of the pertinent circumstances, including the losses of any victims, the financial circumstances of the defendant and the defendant's family, the rehabilitative consequences to the defendant and any victims, and such other factors as the court may consider.

*Id.*

In *State v. Whetzel,* 200 W.Va. 45, 488 S.E.2d 45 (1997), this Court observed that the West Virginia restitution statute "predicates an award of restitution upon a defendant's conviction of a felony or misdemeanor and upon the 'physical, psychological or economic injury or loss to the victim.'" 200 W.Va. at 48, 488 S.E.2d at 48. The *Whetzel* Court further explained that

> the clear intention of the Legislature in enacting W. Va.Code § 61–11A–4(a) was to enable trial courts to require convicted criminals to pay *all losses sustained by victims in the commission of the crime giving rise to the conviction.* Any other interpretation would run counter to the legislative intent that 'all that is possible' be done, an intent set forth in W. Va.Code § 61–11A–1(b).

*Id.* (emphasis supplied). In *Whetzel,* this Court discussed *Hebert v. State,* 600 So.2d 1293 (Fla.Dist.Ct.App.1992), with approval, explaining as follows:

> Similarly, in *Hebert v. State,* 600 So.2d 1293 (Fla.Dist.Ct.App.1992), the Florida court dealt with the question of how much restitution was payable by defendants who were charged with grand theft, but plead guilty to petit theft. Petit theft was the crime of theft of items having a value of $300.00 or less. The court subsequently required the defendants to pay restitution in the amount of $2,530.00. On appeal the defendants claimed that the trial court legally could require them to pay no more

than $300.00 in restitution. The court of appeal rejected that claim. The court noted that the Florida restitution statute was a separate statute from the statute defining the criminal offense and indicated that the *restitution statute, which dictated loss caused by the crime, rather than the law dictating the degree of the crime, should determine the level of restitution.*

*Id.* at 47, 488 S.E.2d at 47 (emphasis supplied). Following its discussion of the *Hebert* reasoning, the *Whetzel* Court continued:

As previously indicated, other jurisdictions have recognized that their *statutes establishing or defining criminal offenses are distinct from their restitution statutes.* They have also recognized that the fact that a criminal has been convicted of a particular offense defined in a particular statute does not govern the question of restitution. *Rather, the separate restitution statute governs the restitution question.* As are the situations involved in the foreign jurisdictions cited, West Virginia's restitution statute is separate from the statutes establishing various offenses.

*Id.* at 48, 488 S.E.2d at 48 (emphasis supplied).[1]

Other jurisdictions evaluating this issue have typically concluded that "a defendant may be ordered to pay restitution only for an offense that he has admitted, upon which he has been found guilty, or upon which he has agreed to pay restitution." *State v. Whitney,* 151 Ariz. 113, 726 P.2d 210, 211 (App.1985). In *State v. Adams,* 189 Ariz. 235, 941 P.2d 908 (App.1997), the trial court had ordered a defendant convicted of fraudulent schemes to pay $550.00 in restitution to a bank.[2] The defendant asserted on appeal that he should not be required to pay restitution to the bank since he had been acquitted of the forgery charges underlying the bank's monetary loss. The reviewing court disagreed, reasoning that it was the defendant's fraudulent scheme which had caused the bank's monetary loss. The court explained that if only the three forgery counts had been at issue, the defendant's "argument might have more weight." *Id.* at 911. However, the defendant had been convicted of fraudulent schemes, and the damage caused to the bank was a result of his scheme. *Id.* at 912. The *Adams* court concluded that "[t]he trial court's restitution order therefore was reasonably related to both Appellant's conviction and the bank's loss." *Id.*

In the present case, the Appellant pled nolo contendere to one count each of fraudulent schemes, embezzlement, forgery, and uttering. We find no merit in the Appellant's contention that such items as stolen cash, cash received for the sale of an outbuilding, and additional checks allegedly written by the Appellant should not have been included as restitution. With regard to the issue of interest paid on the victim's line of credit, we find no clear abuse of discretion in allowing the repayment of interest. However, on remand, the issue of interest on the loan should be revisited to ascertain whether the victim's decision to allow this interest to be incurred was a necessary result of the Appellant's criminal activity or a convenient but unnecessary decision by the victim. We conclude that Appellant's plea of nolo contendere to fraudulent schemes,[3] embezzlement, forgery,

1. A related issue is the Appellant's contention that the West Virginia Victim's Compensation Statute is unconstitutional. The Appellant argued that the preponderance of the evidence standard set forth in West Virginia Code § 61–11A–5 is unconstitutional to the extent that it relieves the State of the burden of proving violations beyond a reasonable doubt. Based upon our prior observations of distinctions between statutes defining criminal violations and statutes providing for victim restitution, we find no merit in the Appellant's argument. As this Court's discussion in *Whetzel* illustrates, the burdens imposed in the criminal trial are distinct from those utilized in the determination of restitution required following conviction or admission of guilt

for the underlying offense. 200 W.Va. at 48, 488 S.E.2d at 48.

2. The $550.00 represented the amount of benefit received by the defendant from two successful attempts to cash forged checks.

3. The Appellant's indictment, Count One, to which he pled guilty to fraudulent schemes under West Virginia Code § 61–3–24d (1995) (Repl.Vol. 2000), asserted that the Appellant committed the offense of fraudulent schemes by

knowingly, unlawfully, feloniously and willfully depriving another person, namely Woman Care, Inc. and/or Patrick C. Bonasso, MD, of

and uttering permitted the inclusion of the items of restitution enumerated by the lower court, based upon the principle that the clear intention of the restitution statute is to require criminals to "pay all losses sustained by victims in the commission of the crime giving rise to the conviction." *Whetzel,* 200 W.Va. at 48, 488 S.E.2d at 48. The lower court heard testimony regarding the losses suffered by the victim and reached a conclusion regarding the appropriate amount of restitution due to the victim. Upon review, the Court finds no abuse of discretion in the lower court's order of restitution for crimes committed by the Appellant in furtherance of the fraudulent schemes, embezzlement, forgery, and uttering.[4]

### C. Dr. Bonasso's Lost Wages

■ The Appellant also contends that he should not be required to pay restitution for the wages the victim allegedly lost during the victim's attendance at court proceedings. An examination of the guiding statute reveals that the components to be included within a restitution order are specifically delineated and limited by that statute. Where bodily injury has occurred, the West Virginia statute permits incorporation of restitution for lost wages.[5] The statute makes no specific allowance, however, for lost wages of a victim incurred as a result of attendance at court proceedings.

In other jurisdictions addressing this precise issue, the resolution of the matter has been determined by reference to the specific language of the individual state's restitution statute. In *Taylor v. State,* 45 P.3d 103 (Okla.App.2002), for instance, the statute specifically permitted recovery of restitution for a victim's loss, including "unreimbursed and nonreimbursable economic losses incurred as a consequence of participation in prosecution and proceedings related to the crime." 21 O.S. Supp.1997, § 142A–1(4). In evaluating the victims' claim that they were entitled to restitution, the Taylor court explained that the "appropriate question is whether the Legislature intended to include as restitution claims of lost wages based solely on work missed for a court appearance." 45 P.3d at 105. Based upon the explicit authorization of the statute, the court permitted restitution for the victims' lost wages. *Taylor,* 45 P.3d at 106.

Where the statutory scheme makes no allowance for such restitution, however, courts have not been inclined to expand the scope of statutorily-defined restitution. In *State v. Goodrich,* 47 Wash.App. 114, 733 P.2d 1000 (1987), for example, the Washington court reversed a restitution order for wages lost as a result of the victim's attendance at trial, finding that reimbursement for such wages was not contemplated by the statute authorizing lost wages resulting from injury. 733 P.2d at 1001; *see also State v. Hefa,* 73 Wash.App. 865, 871 P.2d 1093, 1094 (1994) (limiting restitution in juvenile matter to wages lost as a result of physical injury, noting that "[t]he authority to order restitution is purely statutory").

Based upon our review of this issue, and because the West Virginia statute governing this matter does not include restitution for loss of wages incurred by the victim while attending court proceedings, we conclude that the lower court erred in awarding restitution for the $12,000.00 in lost wages asserted by the victim. On remand, lost wages of the victim should not be included in the restitution order.

Based upon the foregoing, we reverse the decision of the lower court and remand this matter with directions to conduct a hearing

---

any money, goods, property or service, to-wit: Checks and/or United State Currency, of a total and aggregate value equal to or in excess of One Thousand Dollars ($1,000.00), fraudulently obtained by means of or as part of a common scheme or plan of fraudulent pretenses, representations or promises, against the peace and dignity of the State.

**4.** We tangentially note that situations may arise in which, through the process of plea bargaining, a defendant and the State might propose a plea

bargain which includes restitution for offenses contained in the indictment to which the defendant had not pled guilty. In such instance, the inclusion of such other items of restitution would rest within the sound discretion of the lower court in its consideration of the plea bargain agreement.

**5.** *See* W. Va.Code § 61–11A–4(b)(2)(C) requiring a defendant to reimburse the victim for income lost where the offense resulted in bodily injury to the victim.

to assess the Appellant's financial ability to pay restitution and to thereafter enter an order of restitution supported by adequate findings of fact and conclusions of law. Litigation costs and lost wages of the victim due to attendance at court proceedings shall not be included, and the issue of the victim's interest on a loan should be revisited, as explained above, for an examination of whether incurring the interest on the loan was essentially voluntary or was indeed necessitated by the criminal acts to which the Appellant pled guilty.

Reversed and Remanded with Directions.

Justice DAVIS concurs and reserves the right to file a concurring opinion.

DAVIS, Justice, concurring:

(Filed Oct. 14, 2003)

Although I fully join in the majority opinion, I concur to explain an aspect of the case which was not specifically addressed in the majority opinion. The majority opinion agreed with the State's confession of error regarding repayment of attorney's fees and expert witness fee resulting from Mr. Cummings' defense. I examine this aspect of the case because I do not want the majority opinion to be taken out of context.

The restitution order in this case provides, in pertinent part, that "[t]he Court further Orders that the defendant's attorney fees and the professional fees of the defendant's expert witness ... be taxed as costs to the defendant." Mr. Cummings objected to this provision of the restitution order because his "attorney's fees and ... expert's Accountant's fees are not restitution for a victim's losses and should not be classified as restitution, and should not have appeared in the restitution order." Mr. Cummings also asserted that under the restitution order Womancare, Inc., as the victim of Mr. Cummings' crimes, will collect the costs of the attorney's and expert witness fees, even though Womancare, Inc. did not pay those sums. After my own review of the record,[1] I agree that the restitution order in this case is sufficiently ambiguous, in light of the State's failure to raise any argument to the contrary, that the restitution order could be read to require Mr. Cummings to pay his attorney's fees and defense costs to Womancare, Inc. I also agree that there is no basis—statutory or judicially created—supporting such a result. However, I wish to emphasize that this conclusion is dictated by the ambiguity of the restitution order and that it *should not* be taken as a recognition that a defendant may never be required to pay the cost of his appointed counsel and defense fees *to the State*.

Here, Mr. Cummings was appointed counsel by the trial court under the provisions of the West Virginia Public Defender Services Act (hereinafter "PDSA") because he was indigent. W. Va.Code § 29-21-16 (1990) (2001 Repl.Vol.) The statutory basis authorizing a circuit court to order a defendant to repay to the State the fees of his or her appointed lawyer as well as the expenses of the defense is found in the PDSA's repayment provision which provides, in pertinent part:

In the circumstances and manner set forth below, circuit judges may order repayment to the state, through the office of the clerk of the circuit court having jurisdiction over the proceedings, of the costs of representation provided under this article:

In every case in which services are provided to an indigent person and an adverse judgment has been rendered against such person, the court may require that person, and in juvenile cases, may require the juvenile's parents or custodian, to pay as costs the compensation of appointed counsel, the expenses of the defense and such other fees and costs as authorized by statute.

W. Va.Code § 29-21-16(g)(1) (1990) (2001 Repl.Vol.). Thus, in appropriate circumstances as spelled out in the PDSA, a defendant may be required to repay *the State* the fees his or her appointed attorney has re-

---

1. *See State v. Allah Jamaal W.*, 209 W.Va. 1, 4 n. 6, 543 S.E.2d 282, 285 n. 6 (2000) (quoting Syl. Pt. 8, *State v. Julius*, 185 W.Va. 422, 408 S.E.2d 1 (1991)) (" 'This Court is not obligated to accept the State's confession of error in a criminal case. We will do so when, after a proper analysis, we believe error occurred." ')

ceived as a result of the representation, as well as expenses of the defense. Indeed, this Court has followed W. Va.Code § 29–21–16(g) and affirmed a circuit court's imposition upon a convicted defendant the obligation to repay the cost of appointed counsel. *See State v. Murrell,* 201 W.Va. 648, 651, 499 S.E.2d 870, 873 (1997) (voiding repayment order only to the extent that it required repayment while defendant was incarcerated in violation of subsection (g)(3), but requiring a repayment hearing once he was released from prison).[2]

I also note that any future confusion between restitution under the West Virginia Victim Protection Act, W. Va.Code § 61–11A–4 & 5 (1984) (2000 Repl.Vol.) and repayment of appointed attorney's fees and costs of defense under the PDSA, W. Va.Code § 29–21–16(g), can be eliminated by entry of separate restitution and repayment orders and/or by specifically detailing that the repayment of a court appointed attorney's fees and defense expenses is made under the authority of W. Va.Code § 29–21–16(g).

With the foregoing understanding, I concur in the majority opinion. I am authorized to state that Justice Maynard joins me in this concurring opinion.

---

**2.** The Public Defender Services Act's reimbursement provision also lists a number of rights the convicted defendant enjoys under the act's repayment provisions. W. Va.Code § 29–21–16(g)(2)–(4).