736 S.E.2d 85

**STATE of West Virginia, Respondent**

v.

**Michael John McGILL, Petitioner.**

No. 11–0261.

Supreme Court of Appeals of
West Virginia.

Submitted Sept. 5, 2012.

Decided Nov. 15, 2012.

Matthew D. Brummond, Assistant Public Defender, Public Defender Corporation, Charleston, WV, for Petitioner.

Darrell V. McGraw, Jr., Attorney General, Barbara H. Allen, Managing Deputy Attorney General, Charleston, WV, for Respondent.

McHUGH, Justice:

Michael John McGill (hereinafter "Petitioner") appeals his conviction pursuant to the December 29, 2010, sentencing order of the Circuit Court of Marshall County. The conviction resulted from acceptance of Petitioner's guilty plea to the offense of escape from custody in violation of West Virginia Code § 61–5–10 (2000). He contends that the circuit court lacked jurisdiction to accept his guilty plea to this offense because his act of leaving home confinement only amounted to a violation of a pre-trial bail condition rather than an escape from custody or confinement. He further argues that the lower court erred by ordering him to pay restitution to the State for costs associated with apprehending him following his unauthorized departure from home confinement.

The State maintains that whether an individual who is placed on home confinement as a condition of bail is subject to the reach of the escape statute is a matter of statutory construction rather than jurisdiction. Since Petitioner did not directly preserve this issue, he waived or forfeited his right to appeal it. The State confesses error as to the propriety of restitution in this case.

After completing a thorough and careful study of the briefs, the portions of the record submitted as the appendix to this appeal, the oral arguments of the parties, and relevant case law, Petitioner's conviction is affirmed, but the imposition of restitution is reversed.

## I. Factual and Procedural Background

In a separate criminal case, Petitioner was placed on home confinement as a condition of bail pending trial on charges of third offense domestic battery and malicious assault.[1] While on pre-trial home confinement, Petitioner moved the court to change his residence while awaiting trial but this request was denied. Thereafter, Petitioner cut his monitoring bracelet and left the residence where he had been ordered to remain.

A group of thirty-seven law enforcement officers identified in the record as members of the West Virginia and Federal Fugitive Task Force undertook the recapture of Petitioner when it was discovered that he had fled West Virginia and traveled into Pennsylvania.[2] It took nine days for the task force to recapture Petitioner.

---

1. Subsequent to the disposition of the pending matter, Petitioner was acquitted by a jury of the underlying third offense domestic battery charge, and convicted of misdemeanor battery as a lesser-included offense of the malicious assault charge.

2. A detective who was part of the task force provided further information to the trial court at

On November 9, 2010, the grand jury returned a two count indictment against petitioner involving the charges of escape from custody and grand larceny,[3] in violation of West Virginia Code § 61–5–10 and § 61–3–13(a) (1994) respectively. A pretrial conference was held on December 10, 2010, at which Petitioner's motion to dismiss the escape from custody charge was entertained. Petitioner essentially argued that a person on pretrial bail is not truly in custody while on home confinement because restraint is not the result of conviction of any crime, and he was unaware that he was in custody as a result of the bail condition. He asserted that the felony charge of escape from custody contained in West Virginia Code § 61–5–10 only has application after a person has been convicted and does not extend to situations where someone is placed on home confinement as a condition of pretrial bail. The prosecution countered by noting that the statute encompassed those charged with a crime by expressly providing that "the custody or confinement . . . [could be] by virtue of a charge or conviction for a felony." *Id.* At the conclusion of the arguments, the lower court denied the motion to dismiss the escape from custody charge. The trial court's ruling was based on the following analysis:

> The crime of escape is completely statutory. . . . Custody and confinement, as per this particular statute, 61–5–10, are different, but the same. There's a difference with a distinction. . . . [C]onfined is when they're with an institution, facility or alternative sentence. Custody is when they're with a person. . . . The theory that the—is charged is that he (Mr. McGill) was in custody of an individual or a representative and not the theory that he was in the confinement of an institution, facility or an alternative sentence of confinement.

> \*    \*    \*

> I do find that he (Mr. McGill) was in the custody, legal custody of the Marshall County Sheriff's Department, specifically Representatives Wallace and Cook.

On December 20, 2010, Petitioner pled guilty[4] to the escape from custody charge. The plea was not tendered as a conditional guilty plea pursuant to Rule 11(a)(2) of the West Virginia Rules of Criminal Procedure. As part of the plea bargain, the State agreed to move to dismiss the grand larceny charge with prejudice. A December 29, 2010, sentencing order reflects that the lower court accepted the proffered plea to the felony offense of escape from custody, imposed a three year sentence, and ordered restitution to the State in the amount of $8,261.56 for costs associated with apprehending the petitioner. The transcript of the sentencing hearing indicates that the basis for ordering restitution was grounded in the court's finding that recovery for the expense of law enforcement protecting the public as a whole was not precluded under the Victim Protection Act of 1984, West Virginia Code §§ 61–11A–1 to 8, when the Act is read in its entirety.

It is from the December 29, 2010, sentencing order that Petitioner filed this appeal.

## II.  Standard of Review

■■■■ This Court's established standard for reviewing sentencing orders as set forth in syllabus point one of *State v. Lucas,* 201 W.Va. 271, 496 S.E.2d 221 (1997), is:

> The Supreme Court of Appeals reviews sentencing orders, including orders of restitution made in connection with a defendant's sentencing, under a deferential

---

the December 29, 2010, sentencing hearing regarding how it was determined that Petitioner left the state and why the large number of law enforcement officers were involved with the recapture. The detective said that the whereabouts of Petitioner had been determined by tracking a cell phone obtained by search warrant. The detective testified that the cell phone was tracked to the West Milton area of Pennsylvania. The detective further indicated that the cell phone tracking revealed that Petitioner had also been in the vicinity of Washington, Pennsylvania where the detective said he had determined Petitioner had stayed at a hotel.

3.  The grand larceny charge was based on Petitioner carrying away an alcohol monitoring bracelet valued at over $1000 when he escaped.

4.  The plea was tendered a little over a month after a change of venue for the trial of the matter had been granted.

abuse of discretion standard, unless the order violates statutory or constitutional commands.

The issues upon which Petitioner bases his appeal are statutory matters which are reviewed as questions of law. "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995).

### III. Discussion

■ As noted at the outset, Petitioner challenges the lower court's rulings in two regards, one which he maintains is grounded in the lower court's lack of jurisdiction which *could* result from a different interpretation of the escape from custody statute than that given it by the lower court, and the other involving the imposition of restitution to the State. The first matter, although couched as a jurisdictional issue, is nothing more than a creative attempt to have this Court examine an issue which was not properly preserved for appeal. The lower court had jurisdiction of the criminal matter before it, which extended to determining the applicability of the escape statute at issue. W.Va. Const. Art VIII, § 6. If jurisdiction was seriously questioned, a timely petition for writ of prohibition should have been filed. As aptly noted by the State, Petitioner effectively waived or forfeited his right to appeal by failing to enter a conditional guilty plea [5] or otherwise preserve the matter for review by seeking a writ of prohibition or proceeding to trial. *See State v. Legg*, 207 W.Va. 686, 690 n. 7,

536 S.E.2d 110, 114 n. 7 (2000), relying on Justice Cleckley's concurrence in *State v. Lilly*, 194 W.Va. 595, 461 S.E.2d 101 (1995) ("When a defendant unconditionally and voluntarily pleads guilty to an offense, the defendant generally waives nonjurisdictional objections to a circuit court's rulings, and therefore cannot appeal those questions to a higher court."). Merely proposing an alternative construction of a statute is too tangential a basis for asserting lack of jurisdiction as grounds for an appeal. As the issue was not properly preserved for appeal, it bears no further consideration at this juncture.

■ This Court has observed that since the Rules of Appellate Procedure have been modified to more clearly provide a right of appeal in all cases, the frequency of such creative methods to obtain review has increased. Although the appellate procedures have undergone change to insure that the disposition of each perfected appeal is reflected in a written decision, nothing has changed as to the professional responsibility of lawyers to proceed only on meritorious issues. The change in the appellate rules was in no way intended to impose a greater or lesser burden on the legal community. Pursuant to principles contained in Rule 3.1 of the West Virginia Rules of Professional Conduct,[6] an appellate remedy should not be pursued unless counsel believes in good faith that error has been committed and there is a *reasonable basis* for the extension, modification, or reversal of existing law.[7]

■ The second issue raised by Petitioner bears closer attention since it raises a meri-

---

**5.** Rule 11(a) of the West Virginia Rules of Criminal Procedure addresses Pleas generally and includes an express provision regarding conditional guilty pleas which reads as follows:

> (2) Conditional pleas. With the approval of the court and the consent of the state, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing the right, on appeal from the judgment, to review of the adverse determination of any specified pretrial motion. A defendant who prevails on appeal shall be allowed to withdraw the plea.

**6.** Rule 3.1 is entitled "Meritorious claims and contentions" and provides in relevant part that "A lawyer shall not bring or defend a proceed-

ing, or assert or controvert an issue therein, unless there is a basis for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law."

**7.** We acknowledge that good faith may at times be defined by the legal obligation of counsel to file a brief referring to any point in the record that might arguably support the appeal in instances where a criminal defendant insists upon appeal after being advised that the case is wholly frivolous. *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967); *see also Turner v. Haynes*, 162 W.Va. 33, 245 S.E.2d 629 (1978), *Rhodes v. Leverette*, 160 W.Va. 781, 239 S.E.2d 136 (1977).

torious issue regarding construction of the statute governing restitution which this Court has not previously addressed directly. Petitioner maintains that the trial court erred by ordering restitution to the State for costs associated with his apprehension since the statute authorizing restitution does not contemplate the inclusion of the State as a victim of crime. The State agrees and confesses error. While the Court is under no obligation to accept the State's confession of error, our analysis which follows finds it to be appropriate in this case. See Syl. Pt. 8, *State v. Julius*, 185 W.Va. 422, 408 S.E.2d 1 (1991) (consideration of State's confession of error).

■ The provisions of the Victim Protection Act of 1984 (hereinafter "Act") govern restitution in criminal cases. W.Va.Code §§ 61–11A–1 to 8. Focusing on the provisions of § 61–11A–4(a) of the Act, the lower court concluded that it was written in broad enough terms to include law enforcement authorities within the meaning of the word "victim" so as to give those authorities the right to an award of restitution for efforts of protecting society. This provision of the Act reads as follows:

> (a) The court, when sentencing a defendant convicted of a felony or misdemeanor

causing physical, psychological or economic injury or loss to a victim, shall order, in addition to or in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of the offense, unless the court finds restitution to be wholly or partially impractical as set forth in this article.

W.Va.Code § 61–11A–4 (2006). The trial court's focus on this provision fails to acknowledge the express legislative findings and purpose underlying the Act. This Court has stressed that, "[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W.Va. 108, 219 S.E.2d 361 (1975). The fairly extensive expression of legislative intention appearing in West Virginia Code § 61–11A–1,[8] relates to the rights of direct victims of the crime—that is, individuals harmed directly by the criminal acts at issue—rather than society as a whole. Additionally, this portion of the Act consistently speaks of crime victims as a distinctly different group from state and local government and the criminal justice system. Furthermore, the provisions of § 61–11A–4(b) likewise infer that a crime victim is one who has been directly victimized by the perpetrator of a criminal act by setting forth the specific

8. West Virginia Code § 61–11A–1 (1984) provides in its entirety:

> (a) The Legislature finds and declares that without the cooperation of victims and witnesses, the criminal justice system would cease to function, yet too often these individuals are either ignored by the criminal justice system or simply used as tools to identify and punish offenders.
>
> The Legislature finds further that all too often the victim of a serious crime is forced to suffer physical, psychological or financial hardship first as a result of the criminal act and then as a result of contact with a criminal justice system not totally responsive to the needs of such victims.
>
> The Legislature finds further that under the current law, law-enforcement agencies must have cooperation from a victim of crime and yet neither the agencies nor the legal system can offer adequate protection or assistance when the victim, as a result of such cooperation, is threatened or intimidated.
>
> The Legislature finds further that while the defendant is provided with counsel who can explain both the criminal justice process and the rights of the defendant, the victim or wit-

ness has no counterpart and is usually not even notified when the defendant is released on bail, the case is dismissed, a plea to a lesser charge is accepted or a court date is changed.

> The Legislature finds further that the victim or witness who cooperates with the prosecutor often find that the transportation, parking facilities and child care services at the court are unsatisfactory and they must often share the pretrial waiting room with the defendant or his family and friends.
>
> The Legislature finds further that the victim may lose valuable property to a criminal only to lose it again for long periods of time to law-enforcement officials, until the trial and appeals are over; many times that property is damaged or lost, which is particularly stressful for the elderly or poor.
>
> (b) The Legislature declares that the purposes of this article are to enhance and protect the necessary role of crime victims and witnesses in the criminal justice process and to ensure that the State and local governments do all that is possible within the limits of available resources to assist victims and witnesses of crime without infringing on the constitutional rights of the defendant.

type of restitution which is allowable under the Act. This subsection of the Act provides as follows:

(b) The order shall require that the defendant:

(1) In the case of an offense resulting in damage to, loss of, or destruction of *property of a victim of the offense:*

(A) Return the property to the *owner of the property* or someone designated by the owner; or

(B) If return of the property under subparagraph (A) is impossible, impractical or inadequate, pay an amount equal to the greater of: (i) The value of the property on the date of sentencing; or (ii) the value of the property on the date of the damage, loss or destruction less the value (as of the date the property is returned) of any part of the property that is returned;

(2) In the case of an offense resulting in *bodily injury to a victim:*

(A) Pay an amount equal to the *cost of necessary medical and related professional services and devices relating to physical, psychiatric and psychological care,* including nonmedical care and treatment rendered in accordance with a method of healing recognized by the law of the place of treatment;

(B) Pay an amount equal to the *cost of necessary physical and occupational therapy and rehabilitation;* and

(C) Reimburse the *victim for income lost by the victim as a result of the offense;*

(3) In the case of an *offense resulting* in bodily injury that also results *in the death of a victim,* pay an amount equal to the *cost of necessary funeral and related services;* and

(4) In any case, if the victim (or if the victim is deceased, the victim's estate) consents, or if payment is impossible or impractical, make restitution in services in lieu of money, or make restitution to a person or organization designated by the victim or the estate.

W.Va.Code § 61–11A–4(b) (emphasis added). Clearly neither damage to society as a whole nor the costs of apprehension and investiga-tion incurred by the government in apprehending criminals are contemplated by this statutory language.

When this Court has applied the Act to other types of situations we have found that the intended beneficiaries of restitution ordered pursuant to the Act are the direct victims of the criminal act under consideration. In *State v. Lucas,* 201 W.Va. 271, 496 S.E.2d 221 (1997), we considered the propriety of ordering restitution to an insurance company for proceeds paid as a result of arson. We concluded that the circumstances supported the order of restitution by noting that "the insurance company is a *direct victim of the crime* and is eligible for restitution under [the Act]." *Id.* at 287, 496 S.E.2d at 237 (emphasis added).

In the later case of *State v. Cummings,* 214 W.Va. 317, 589 S.E.2d 48 (2003), questions were raised regarding the propriety of restitution for the defendant's attorney and expert witness fees as well as for the victim's lost wages resulting from his attendance at court hearings. With respect to the attorney and expert witness fees, the State confessed error and the majority opinion did not address the issue. However, Justice Davis's concurrence in *Cummings* commented on the question by observing that although in some circumstances a defendant might be ordered to repay these costs to the State pursuant to the West Virginia Public Defender Services Act,[9] the attorney and witness fees did not constitute restitution which could be ordered pursuant to the Victim Protection Act of 1984. *Id.* at 323–24, 589 S.E.2d at 54–55. With respect to the issue of the victim's lost wages while he attended court, we noted in *Cummings* that "[w]here the statutory scheme makes no allowance for such restitution, ... courts have not been inclined to expand the scope of statutorily-defined restitution." *Id.* at 322, 589 S.E.2d at 53. Thereafter the Court concluded in *Cummings* that loss of wages incurred by the victim of a crime as a result of the victim's attendance at court proceedings was not proper.

Based upon an in pari materia reading of the Act and in keeping with our

9. *See* W.Va.Code § 29–21–16(g).

prior decisions, we find that the trial court's order directing that restitution be paid to the State for costs associated with apprehending Petitioner was improper. Accordingly we hold that the restitution provisions of the Victim Protection Act of 1984, West Virginia Code §§ 61–11A–1 to 8, do not extend to recovery of costs or expenses incurred by governmental agencies in apprehending perpetrators of criminal acts.

In light of the foregoing discussion, we affirm the lower court's order regarding conviction of Petitioner for escape from custody pursuant to West Virginia Code § 61–5–10, but reverse the imposition of restitution to the State for activities of law enforcement authorities pursuant to West Virginia Code §§ 61–11A–1 to 8. The case is remanded for entry of an amended sentencing order consistent with the principles set forth herein.

### IV. Conclusion

Based upon the foregoing, the December 29, 2010, sentencing order of the Circuit Court of Marshall County is affirmed as to Petitioner's conviction on his guilty plea to the escape from custody charge, reversed as to imposition of restitution to the State, and remanded for entry of a corrected sentencing order consistent with this opinion.

Affirmed, in part, reversed, in part, and remanded.