IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2015 Term

**FILED**

**October 8, 2015**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 14-0950

STATE OF WEST VIRGINIA,
Plaintiff Below, Respondent

v.

TAYLOR R. WASSON, JR.,
Defendant Below, Petitioner

Appeal from the Circuit Court of Berkeley County
Honorable Gray Silver, III, Judge
Criminal Action No. 13-F-213

AFFIRMED

Submitted:  September 22, 2015
Filed:  October 8, 2015

Benjamin M. Hiller, Esq.
Public Defender Corporation,
23rd Judicial Circuit
Martinsburg, West Virginia
Attorney for Petitioner

Cheryl K. Saville, Esq.
Assistant Prosecuting Attorney
Martinsburg, West Virginia
Attorney for Respondent

JUSTICE LOUGHRY delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.      "The Supreme Court of Appeals reviews sentencing orders, including orders of restitution made in connection with a defendant's sentencing, under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syl. Pt. 1, *State v. Lucas*, 201 W.Va. 271, 496 S.E.2d 221 (1997).

2.      "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt. 1, *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995).

3.      "Read *in pari materia*, the provisions of *W.Va.Code*, 61-11A-1 [1984], *W.Va.Code*, 61-11A-4(a) [1984], *W.Va.Code*, 61-11A-4(d) [1984], *W.Va.Code*, 61-11A-5(a) [1984] and *W.Va.Code*, 61-11A-5(d) [1984], establish that at the time of a convicted criminal defendant's sentencing, a circuit court should ordinarily order the defendant to make full restitution to any victims of the crime who have suffered injuries, as defined and permitted by the statute, unless the court determines that ordering such full restitution is impractical." Syl. Pt. 2, *State v. Lucas*, 201 W.Va. 271, 496 S.E.2d 221 (1997).

i

4. "Under *W.Va.Code*, 61-11A-1 through -8 and the principles established in our criminal sentencing jurisprudence, the circuit court's discretion in addressing the issue of restitution to crime victims at the time of a criminal defendant's sentencing is to be guided by a presumption in favor of an award of full restitution to victims, unless the circuit court determines by a preponderance of the evidence that full restitution is impractical, after consideration of all of the pertinent circumstances, including the losses of any victims, the financial circumstances of the defendant and the defendant's family, the rehabilitative consequences to the defendant and any victims, and such other factors as the court may consider." Syl. Pt. 3, *State v. Lucas*, 201 W.Va. 271, 496 S.E.2d 221 (1997).

5. "When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syl. Pt. 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W.Va. 137, 107 S.E.2d 353 (1959).

6. Pursuant to West Virginia Code § 61-11A-4(e) (2014), a court may order a defendant to make restitution to an insurance company to the extent that the insurance company has compensated a victim for loss attributable to the defendant's criminal conduct.

LOUGHRY, Justice:

The petitioner, Taylor R. Wasson, Jr., appeals an August 25, 2014, order of the Circuit Court of Berkeley County, requiring him, *inter alia,* to pay restitution in the amount of $5,478.93 to State Farm Insurance Company ("State Farm") within one year of his release from incarceration. In this appeal, Mr. Wasson contends that the circuit court erred by ordering him to pay restitution to State Farm because it was not a "direct victim" of his criminal act. Upon consideration of the parties' briefs and arguments, the submitted record, and pertinent authorities, we find no error and, therefore, affirm the circuit court's order.

## I. Factual and Procedural Background

In October 2013, Mr. Wasson was indicted and charged with burglary, grand larceny, conspiracy to commit burglary, and misdemeanor unlawful possession of a firearm. It was alleged that Mr. Wasson burglarized the home of Samuel and Betty Boynton on May 10, 2013. Subsequently, Mr. Wasson entered into a plea agreement with the respondent, the State of West Virginia ("State"), whereby he agreed to plead guilty to the burglary charge in

1

exchange for dismissal of the remaining counts set forth in the indictment.[1]  Upon entry of

his guilty plea, Mr. Wasson was sentenced to an indeterminate term of one to fifteen years

in a state penitentiary for the burglary conviction.  By agreement of the parties, a hearing was

scheduled to address the matter of restitution.

A restitution hearing was held on June 3, 2014.  Mrs. Boynton testified that

she and her husband had filed a claim with their insurance company, State Farm, for their lost

property.[2]  She stated the total dollar amount of their claim was $12,404.95.  Due to

depreciation that amount was reduced by State Farm to $11,218.73.[3]  Mrs. Boyton explained

that she and her husband ultimately received a settlement in the amount of $5,478.93 from

State Farm pursuant to their insurance contract.[4]  Based on this evidence, the circuit court

ordered Mr. Wasson to pay restitution to the Boytons in the amount of $5,739.80 for their

unrecovered loss.  The Court further ordered Mr. Wasson to pay $5,478.93 to State Farm,

---

[1]The plea agreement also encompassed charges against Mr. Wasson in two other unrelated cases.  Consequently, in addition to burglarly, Mr. Wasson pled guilty to gross child neglect creating risk of serious bodily injury and robbery in the first degree.

[2]The items stolen from the Boynton home included an X-Box gaming console, X-Box games, jewelry, three televisions, and nine firearms.  Three of the stolen guns were recovered when Mr. Wasson was arrested.

[3]The depreciation calculated by State Farm was not challenged by any party.

[4]The Boyntons' insurance policy had a $1,000.00 deductible, a $2,500.00 aggregate policy limit for firearms, and a $1,000.00 aggregate policy limit on jewelry and fur.  The total amount claimed by the Boyntons for firearms and jewelry was $5,043.80 more than the total aggregate policy limit for these items.

which was the amount that State Farm paid to the Boyntons to settle their claim. The court's decision was set forth in the final order entered on August 25, 2014, and this appeal followed.

## II. Standard of Review

Our standard for reviewing orders of restitution was set forth in syllabus point one of *State v. Lucas*, 201 W.Va. 271, 496 S.E.2d 221 (1997), as follows: "The Supreme Court of Appeals reviews sentencing orders, including orders of restitution made in connection with a defendant's sentencing, under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Because the issue upon which Mr. Wasson bases his appeal involves statutory interpretation, we will also employ a *de novo* standard of review. As explained in syllabus point one of *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995), "[w]here the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review."

## III. Discussion

West Virginia Code §§ 61-11A-1 through -8 (2014), known as the Victim Protection Act (the "Act") "codif[y] the principal statutory law governing court-ordered

3

restitution by a person convicted of a crime." *Lucas*, 201 W.Va. at 276, 496 S.E.2d at 226.

Addressing the subject of restitution, this Court has previously observed that

> [r]ead *in pari materia*, the provisions of *W.Va.Code*, 61-11A-1 [1984], *W.Va.Code*, 61-11A-4(a) [1984], *W.Va.Code*, 61-11A-4(d) [1984], *W.Va.Code*, 61-11A-5(a) [1984] and W.Va.Code, 61-11A-5(d) [1984], establish that at the time of a convicted criminal defendant's sentencing, a circuit court should ordinarily order the defendant to make full restitution to any victims of the crime who have suffered injuries, as defined and permitted by the statute, unless the court determines that ordering such full restitution is impractical.

*Lucas*, 201 W.Va. at 273, 496 S.E.2d at 223, syl. pt. 2. This Court further recognized in

*Lucas* that

> [u]nder *W.Va.Code*, 61-11A-1 through -8 and the principles established in our criminal sentencing jurisprudence, the circuit court's discretion in addressing the issue of restitution to crime victims at the time of a criminal defendant's sentencing is to be guided by a presumption in favor of an award of full restitution to victims, unless the circuit court determines by a preponderance of the evidence that full restitution is impractical, after consideration of all of the pertinent circumstances, including the losses of any victims, the financial circumstances of the defendant and the defendant's family, the rehabilitative consequences to the defendant and any victims, and such other factors as the court may consider.

201 W.Va. at 273, 496 S.E.2d at 223, syl. pt. 3. In this appeal, Mr. Wasson does not challenge the portion of the circuit court's final order requiring him to pay restitution to the Boyntons. He only asserts error insofar as the order requires him to pay restitution to State Farm.

4

Mr. Wasson argues that he should not be required to pay restitution to State Farm because it was not a "direct victim" of his criminal act. Focusing upon West Virginia Code § 61-11A-4(a), Mr. Wasson contends that State Farm is not a "victim" within the meaning of this provision so as to give the insurer the right to an award of restitution. This provision of the Act provides:

> The court, when sentencing a defendant convicted of a felony or misdemeanor causing physical, psychological or economic injury or loss to a victim, shall order, in addition to or in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of the offense, unless the court finds restitution to be wholly or partially impractical as set forth in this article.

W.Va. Code § 61-11A-4(a). Mr. Wasson maintains this provision only allows an insurance company to be granted an award of restitution when a criminal defendant intends to and does obtain money or other benefits from said company through his or her criminal conduct. Acknowledging that the Act does not explicitly define "victim," Mr. Wasson relies upon this Court's decisions in *Lucas* and *State v. McGill*, 230 W.Va. 85, 736 S.E.2d 85 (2012), to support his argument.

In *Lucas*, the defendant was convicted of first degree arson after he set fire to his grocery store business and collected the insurance proceeds. At his sentencing hearing, the trial court ordered the defendant to pay restitution of $1,430,000.00 to Aetna Casualty Company, which was the exact amount the company paid to settle the defendant's insurance

5

claim as a result of the fire. On appeal, the defendant argued that Aetna was not a "victim" under the Act and, therefore, was not entitled to restitution. Rejecting the defendant's argument, this Court held that "[w]here a criminal defendant intends to and does obtain money or other benefit from an insurance company by committing a criminal act of arson, the insurance company is a direct victim of the crime and is eligible for restitution under the provisions of W.Va.Code, 61-11A-4(a) [1984]." 201 W.Va. at 274, 496 S.E.2d at 224, syl. pt. 8.

In contrast, in *McGill*, this Court reversed a circuit court order requiring a defendant to pay restitution to the state for expenses incurred in apprehending him after he escaped from custody. We explained that the Act is aimed at compensating the "direct victims of the crime–that is, individuals harmed directly by the criminal acts at issue–rather than society as a whole." *Id.* at 89, 736 S.E.2d at 89. Therefore, we concluded the word "victim" could not be read so broadly as to include law enforcement authorities. Accordingly, this Court held in syllabus point five of *McGill* that "[t]he restitution provisions of the Victim Protection Act of 1984, West Virginia Code §§ 61-11A-1 to 8, do not extend to recovery of costs or expenses incurred by governmental agencies in apprehending perpetrators of criminal acts." 230 W.Va. at 86, 736 S.E.2d at 86.

Based upon the above, Mr. Wasson maintains that the award of restitution to State Farm was improper because he did not intend to, nor did he obtain, any money, property, or benefit from the company as a result of his criminal conduct. Upon review of the record, we find Mr. Wasson's reliance upon *Lucas* and *McGill* to be misplaced. Here, the circuit court made no finding that State Farm was a "direct victim" of Mr. Wasson's criminal activity. Rather, the circuit court granted State Farm an award of restitution pursuant to West Virginia Code § 61-11A-4(e), a provision authorizing restitution payments to third parties that have reimbursed the victim. In that regard, the statute provides, in pertinent part:

> The court shall not impose restitution with respect to a loss for which the victim has received or is to receive compensation, except that *the court may, in the interest of justice, order restitution to any person who has compensated the victim for loss to the extent that the person paid the compensation.*

*Id.* (emphasis supplied).

The circuit court concluded that State Farm was a "person" within the meaning of West Virginia Code § 61-11A-4(e) and, therefore, was entitled to restitution because it compensated the Boyntons for a portion of their loss. Acknowledging that the term "person" is not defined by the provisions of the Act, the circuit court relied upon West Virginia Code § 2-2-10 (2013), a statute that provides controlling rules for statutory construction "unless a different intent on the part of the Legislature be apparent from the context." In particular,

7

the court applied West Virginia Code § 2-2-10(i), which defines "person" to include "corporations, societies, associations and partnerships, if not restricted by the context[.]"

Given the qualifying phrase "restricted by the context" included in West Virginia Code § 2-2-10(i) coupled with the phrase "in the interest of justice" set forth in West Virginia Code § 61-11A-4(e), Mr. Wasson asserts that the definition of "person" should have been interpreted more narrowly by the circuit court. He maintains that it is inherently unfair and contrary to the interests of justice to require an indigent defendant[5] to pay restitution to an insurance company for a settlement paid pursuant to an insurance contract given that the insurance company assessed and assumed the risk, collected premiums therefor, and has an adequate remedy through subrogation. For these reasons, Mr. Wasson asserts that other states prohibit insurance companies from collecting restitution unless they are a direct victim of the defendant's criminal conduct.

As is clear from a review of cases from other jurisdictions, the decisions addressing this issue vary depending on the specific language of the relevant statute. For instance, in *State v. Alford*, 970 S.W.2d 944 (Tenn. 1998), the defendant was convicted of aggravated assault and ordered to pay restitution to the victim and the insurance carrier that

---

[5]Mr. Wasson has not challenged the restitution awarded to State Farm based on an inability to pay.

8

paid the victim's medical expenses. Vacating the restitution order with respect to the payment directed to the insurance carrier, the Tennessee Supreme Court found that the meaning of "victim" as used in the Tennessee restitution statute referred to "the individual or individuals against whom the offense was actually committed" and that "the guidance offered from the language of the statute [was] that the legislature did not intend 'victim' to apply to insurers in this context." 970 S.W.2d at 946.

Similarly, in *State v. Stanley*, 339 S.E.2d 668 (N.C. Ct. App. 1986), the defendant, who pled guilty to one count of felonious larceny of a motor vehicle, was ordered by the trial court to pay $18,400.00 as restitution to an insurance company for payment it made to the car dealership that owned the subject vehicle. In awarding restitution to the insurance company, the trial court declared that the North Carolina restitution statute was unconstitutional to the extent that it provided "no third party shall benefit by way of restitution and reparation as a result of liability of that third party to pay indemnity to an aggrieved party for the damage or loss caused by the defendant." *Id.* at 670. The appellate court reversed the trial court's decision, reasoning that the distinction set forth in the statute between "aggrieved parties" and third-party indemnitors was rationally related to the state's goals to "promote the rehabilitation of criminal defendants and to provide restitution and reparation to victims or 'aggrieved parties' who *directly* suffered damage or loss as a consequence of criminal misconduct." *Id.* at 671. The court explained that "the legislature

could have rationally concluded that third-party indemnitors should be precluded from receiving restitution" because "more often than not third-party indemnitors are insurance companies" that "have voluntarily contracted to assume liability for damage or loss arising out of criminal conduct." *Id*. However, the court recognized that "[a]n indemnitor's right to pursue civil remedies against a criminal defendant, or against the insured to recover funds paid by the criminal defendant to the insured, remain[ed] intact." *Id.*

In *Clayborn v. Commonwealth*, 701 S.W.2d. 413 (Ky. Ct. App. 1985), the Kentucky court determined the insurance company that paid an assault victim $22,000.00 for impaired earnings and medical expenses was not a reimbursable entity under the Kentucky restitution statute. The relevant statute limited restitution to "the victim's actual out-of-pocket expenses which are paid by the victim, the Department for Human Resources, the crime victim compensation board or other governmental entity." *Id.*at 415. Consequently, the insurance company was not entitled to restitution despite the fact that it had incurred expenses as a result of the defendant's assault.

In marked contrast to these rulings, a Virginia appellate court upheld an order requiring the defendant, who had been convicted of multiple counts of burglary and grand larceny, to make restitution to the insurance companies that had paid the victims of his crimes. *See Alger v. Commonwealth*, 450 S.E.2d 765 (Va. Ct. App. 1994) In so holding,

10

the court rejected the defendant's contention that a corporation was not an "individual" to whom restitution could be ordered because it would have required a finding that the state legislature intended to curtail the class of victims entitled to restitution. *Id.* at 767. Instead, the court construed the applicable restitution statutes "as declaring a legislative intent to provide for restitution for the victims of crimes, including corporations." *Id.*

Likewise, in *State v. Merrill*, 665 P.2d 1022 (Ariz. Ct. App. 1983), the appellate court was tasked with determining whether the trial court had erred by ordering the defendant, who pled guilty to burglary, to make restitution to an insurance company as a condition of probation. The applicable Arizona statute mandated restitution where there was *"a* victim who suffered economic loss." *Id. at* 1023. Upon review, the court concluded that the insurance company that reimbursed the owner of the property involved in the burglary had suffered an economic loss and therefore, was "a victim" within the scope of the statute. *Id.*

In *People v. Bond*, 297 N.W.2d 620 (Mich. Ct. App. 1980), the defendant, who was convicted of negligent homicide, was ordered by the trial court to pay the decedent's insurance company restitution for the automobile damage and funeral expenses that were paid to the decedent's estate. The applicable Michigan statute allowed the sentencing court to impose restitution "as the circumstances of the case may require or warrant, or as in its

judgment may be proper." *Id.* at 621. The appellate court interpreted this language as affording broad discretion to the sentencing judge "to fashion a just remedy under all circumstances." *Id.* Accordingly, the sentencing court's order of restitution requiring the defendant to pay the decedent's insurance company was upheld.

As the cases discussed above illustrate, the parameters of an award of restitution must be determined based upon the language of the applicable statute. We have long held that "[w]hen a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute." Syl. Pt. 5, *State v. General Daniel Morgan Post No. 548, Veterans of Foreign Wars*, 144 W.Va. 137, 107 S.E.2d 353 (1959). In addition, we have previously observed that

> [t]he legislative intent of the West Virginia Legislature in enacting West Virginia's restitution act is set forth in W.Va.Code § 61-11A-1, which provides in relevant part:
>
> > The Legislature declares that the purposes of this article are . . . to ensure that the state and local governments do all that is possible within the limits of available resources to assist victims . . . of crime . . .
>
> W.Va.Code § 61-11A-1(b).

*State v. Whetzel*, 200 W.Va. 45, 48, 488 S.E.2d 45, 48 (1997). The language of West Virginia Code § 61-11A-4(e) clearly and unambiguously provides for restitution to "to any

12

person who has compensated the victim for loss." By definition set forth in West Virginia Code § 2-2-10(i), the Legislature afforded corporations, which necessarily include insurance companies, the status of a "person." As such, we decline to narrowly read West Virginia Code § 61-11A-4(e) so as to preclude an insurance company from receiving restitution from a defendant to the extent it has compensated a victim for a loss attributable to the defendant's criminal conduct. Allowing trial courts to order defendants to make restitution directly to insurance companies further assists victims by relieving them from the burden associated with an insurer pursuing its own subrogation claim and the possibility of involvement in litigation to resolve such a claim.

We further find that absolving defendants from the financial consequences of their crimes when their victims have insurance would not comport with the rehabilitative and punitive aspects of restitution. In that regard, we have noted that in addition to compensating crime victims for their losses,

> [r]estitution can aid an offender's rehabilitation by strengthening the individual's sense of responsibility. The probationer may learn to consider more carefully the consequences of his or her actions. One who successfully makes restitution should have a positive sense of having earned a fresh start and will have tangible evidence of his or her capacity to alter old behavior patterns and lead a law-abiding life. Conditioning probation on making restitution also protects the community's interest in having the victims of crime made whole.

13

> Thus, [r]estitution imposed in a proper case and in an appropriate manner may serve the salutary purpose of making a criminal understand that he has harmed not merely society in the abstract but also individual human beings, and that he has a responsibility to make them whole.

*Fox v. State*, 176 W.Va. 677, 681, 347 S.E.2d 197, 201-02 (1986) (internal quotations and citations omitted). To that end, "the criminal restitution scheme should always require the offender to pay the full cost of his crime, receiving no windfall from the fortuity that the victim was otherwise reimbursed[.]" *People v. Birkett*, 980 P.2d 912, 925 (Cal. 1999). In other words, "[t]he interests of justice would *not* be served by allowing a thief to retain or otherwise benefit from the spoils of his crime simply because he picked a victim who was prudent enough to have obtained insurance." *State v. Tuialii*, 214 P.3d 1125, 1131 (Haw. Ct. App. 2009). Accordingly, we now hold that pursuant to West Virginia Code § 61-11A-4(e), a court may order a defendant to make restitution to an insurance company to the extent that the insurance company has compensated a victim for loss attributable to the defendant's criminal conduct.

## IV. Conclusion

For the reasons set forth above, the circuit court did not err in ordering Mr. Wasson to make restitution to State Farm. Therefore, the final order of the Circuit Court of Berkeley County entered on August 25, 2014, is affirmed.

Affirmed.

14