798 S.E.2d 862

**STATE of West Virginia, Respondent**

v.

**Charity Nicole BAGENT, Defendant Below, Petitioner**

No. 16-0051

Supreme Court of Appeals of West Virginia.

Submitted: January 25, 2017

Filed: April 10, 2017

David Skillman, Esq., Bottner & Skillman, Charles Town, West Virginia, Attorney for Petitioner

Brandon C. H. Sims, Esq., Assistant Prosecutor, Charles Town, West Virginia, Attorney for Respondent

Workman, Justice:

This is an appeal by Charity Nicole Bagent (hereinafter "the Petitioner") from a restitution order entered by the Circuit Court of Jefferson County. Subsequent to her conviction for receiving or transferring stolen property, daytime burglary, and conspiracy to transfer or receive stolen property, the circuit court entered an order indicating that the Petitioner was jointly and severally liable, with two co-defendants, for restitution in the amount of $46,592.00. The Petitioner appeals the circuit court's determination of restitution, arguing the circuit court erred by ordering restitution for the victim's lost earnings, rather than solely out-of-pocket expenses. She further contends the circuit court erred by failing to adequately consider her limited financial resources. Upon thorough evaluation of the facts, arguments of counsel, and applicable precedent, this Court affirms, in part; vacates, in part; and remands with directions.

### I. Factual and Procedural History

On April 10, 2014, the Petitioner and four other individuals stole forty-two iron tractor weights belonging to Mr. Ralph Moler. Mr. Moler had used the tractor weights in his farming business. The Petitioner subsequently pled guilty to receiving or transferring stolen property, daytime burglary, and conspiracy to transfer or receive stolen property. She was sentenced to concurrent sentences of not less than one nor more than ten years for the first two offenses and not less than one nor more than five years for the third offense, to be served consecutively to the concurrent one to ten year sentences. Pursuant to the plea agreement, all three sentences were suspended, and the Petitioner was placed on supervised probation for five years. The plea agreement also contained a provision requiring the Petitioner to "pay full restitution in an amount to be determined by the Probation Department." Moreover, the plea agreement reflected the State's concomitant dismissal of two felony charges and one misdemeanor charge against

the Petitioner, as well as her agreement to cooperate in the prosecution of her co-defendants.

The Petitioner was sentenced on October 19, 2015, and required to pay $46,592.00 in restitution to the victim. Based upon the Petitioner's objection to the amount of restitution determined by the circuit court, a restitution hearing was held on November 30, 2015. The victim, Mr. Moler, testified that the theft of the tractor weights prevented him from planting fields for approximately two weeks, while he waited for insurance proceeds and the purchase of new weights. He further testified that he had lost profits of $46,592.00, based upon the acres not planted, the dollar amount lost per acre not planted, and the total planting days lost attributable to the theft.[1]

The Petitioner also testified at the restitution hearing. She explained her financial status as an unemployed twenty-four-year old woman with a ninth grade education and three children by two different fathers. According to the Petitioner, she does not receive any child support from either father. She testified that she has a drug addiction and is entirely reliant on her mother and public assistance for support.

The circuit court entered a restitution order on December 20, 2015, making the Petitioner liable for $46,592.00 in losses to the victim. This appeal followed.

## II. Standard of Review

■ This Court has enunciated the following applicable standard of review: "The Supreme Court of Appeals reviews sentencing orders, including orders of restitution made in connection with a defendant's sentencing, under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands." Syl. Pt. 1, *State v. Lucas*, 201 W.Va. 271, 496 S.E.2d 221 (1997); *see also* Syl. Pt. 1, *State v. McGill*, 230 W.Va. 85, 736 S.E.2d 85 (2012), *State v. Head*, 198 W.Va. 298, 301, 480 S.E.2d 507, 510 (1996). We are also mindful of this Court's standard for reviewing issues involving statutory interpretation. In syllabus point one of *Chrystal R.M. v. Charlie A.L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995), this Court held: "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." With those standards as guidance, we proceed to an evaluation of this matter.

## III. Discussion

The Petitioner appeals the restitution decision and advances two arguments in support of her position. First, she contends the circuit court erred in ordering restitution where the reimbursement sought by the victim is for a type of loss not specifically mentioned in West Virginia Code § 61-11A-4 (2014). Second, she contends the circuit court erred in failing to consider her financial resources and her alleged inability to pay the ordered restitution.

### A. Statutory Authority

■ We first address the Petitioner's contention that the applicable statute does not contemplate restitution for the type of injury the victim sustained in this case. She maintains the statute's reference to "income lost by the victim" is encompassed exclusively within its reference to crimes causing "bodily injury."[2] She consequently argues the stat-

---

1. Although there was a delay in planting of approximately one month, only two weeks were attributable solely to the theft of the tractor weights, and the other two weeks were based upon inclement weather conditions. That is reflected in the $46,592.00 restitution amount. Specifically, the written estimates of loss submitted by Mr. Moler indicated he was unable to plant for thirteen days due to the theft. He explained that his two tractors would have planted 64 acres per day per tractor and he would have received $28.00 per acre planted, for a total of $46,592.00. He also noted that he had an insurance deductible of $500.00. His insurance paid the cost of the actual tractor weights but did not compensate him for his lost productivity.

2. West Virginia Code § 61-11A-4(a) and (b) provide, in pertinent part, as follows:

   (a) The court, when sentencing a defendant convicted of a felony or misdemeanor causing physical, psychological or *economic injury or loss* to a victim, *shall order*, in addition to or in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of the offense, unless the court finds restitution to be wholly or partially impractical as set forth in this article.

ute does not contemplate reimbursement for "income lost" where, as in the present case, there is no bodily injury to the victim.[3] This Court has previously observed that determinations of appropriate restitution are "governed by the West Virginia Victim Protection Act of 1984, West Virginia Code §§ 61-11A-1 through -8 (1984) (Repl. Vol. 2000), which codifies the statutory law of this state regarding court-ordered restitution by an individual convicted of a crime." *State v. Cummings*, 214 W.Va. 317, 320, 589 S.E.2d 48, 51 (2003).

The Victim Protection Act provides very explicit explanations of its purpose and goals, as this Court recognized in *State v. Rebecca F.*, 233 W.Va. 354, 758 S.E.2d 558 (2014).

> W.Va. Code § 61-11A-1 of the *Victim Protection Act* provides an extensive statement of the Legislature's intention "to enhance and protect the necessary role of crime victims and witnesses in the criminal justice process and to ensure that the state and local governments do all that is possible within the limits of available resources to assist victims and witnesses of crime [.]"[4]

233 W.Va. at 359, 758 S.E.2d at 563 (footnote added).

■ Consistent with the recognized objectives of the statutory scheme, this Court has acknowledged a presumption in favor of full restitution to victims. In syllabus point three of *State v. Lucas*, 201 W.Va. 271, 496 S.E.2d 221 (1997), this Court explained:

> Under W.Va. Code, 61-11A-1 through -8 and the principles established in our criminal sentencing jurisprudence, the circuit court's discretion in addressing the issue of restitution to crime victims at the time of a criminal defendant's sentencing is to be guided by a *presumption in favor of an award of full restitution to victims*, unless the circuit court determines by a preponderance of the evidence that full restitution is impractical, after consideration of all of the pertinent circumstances, including the losses of any victims, the financial circumstances of the defendant and the defendant's family, the rehabilitative consequences to the defendant and any victims, and such other factors as the court may consider.

*Id.* at 273, 496 S.E.2d at 223 (emphasis supplied). In *Lucas*, this Court approved a resti-

---

If the court does not order restitution, or orders only partial restitution, under this section, the court shall state on the record the reasons therefor.
(b) The order shall require that the defendant:
(1) In the case of an offense resulting in damage to, loss of, or destruction of property of a victim of the offense:
(A) Return the property to the owner of the property or someone designated by the owner; or
(B) If return of the property under subparagraph (A) is impossible, impractical or inadequate, pay an amount equal to the greater of: (i) The value of the property on the date of sentencing; or (ii) the *value of the property* on the date of the damage, loss or destruction less the value (as of the date the property is returned) of any part of the property that is returned;
(2) In the case of an offense resulting in *bodily injury* to a victim:
    ....
(C) Reimburse the victim for *income lost* by the victim as a result of the offense[.]
(Emphasis supplied).

**3.** The Petitioner contends restitution should be limited to the $500 deductible paid by the victim to his insurance carrier.

**4.** West Virginia Code § 61-11A-1 provides, in pertinent part, as follows:

(a) The legislature finds and declares that without the cooperation of victims and witnesses, the criminal justice system would cease to function, yet too often these individuals are either ignored by the criminal justice system or simply used as tools to identify and punish offenders.
The legislature finds further that all too often the victim of a serious crime is forced to suffer physical, psychological or financial hardship first as a result of the criminal act and then as a result of contact with a criminal justice system not totally responsive to the needs of such victims.

    ....

(b) The legislature declares that the purposes of this article are to enhance and protect the necessary role of crime victims and witnesses in the criminal justice process and to ensure that the state and local governments do all that is possible within the limits of available resources to assist victims and witnesses of crime without infringing on the constitutional rights of the defendant.

tution order requiring the defendant pay $1.43 million, based upon insurance proceeds an insurer paid as result of the defendant's arson. *Id.* at 274, 496 S.E.2d at 224.

Similarly, in *State v. Whetzel*, 200 W.Va. 45, 488 S.E.2d 45 (1997), this Court focused upon the purpose of the restitution statute's design, "predicat[ing] an award of restitution upon a defendant's conviction of a felony or misdemeanor and upon the 'physical, psychological or economic injury or loss to the victim.'" *Id.* at 48, 488 S.E.2d at 48.

> [T]he clear intention of the Legislature in enacting W. Va.Code § 61-11A-4(a) was to enable trial courts to require convicted criminals to pay *all losses sustained by victims in the commission of the crime giving rise to the conviction.* Any other interpretation would run counter to the legislative intent that 'all that is possible' be done, an intent set forth in W. Va. Code § 61-11A-1(b).

200 W.Va. at 48, 488 S.E.2d at 48. (emphasis supplied).

■ West Virginia Code § 61-11A-4 [5] provides definitive authority to order restitution under certain circumstances in which a defendant has committed a crime causing economic injury or loss to the victim. The particular component of victim injury present in the case sub judice is loss of earning power due to the items stolen rather than any physical impairment to the victim; that type of loss is not directly addressed in the statute. This Court finds, however, that restitution for such loss is within the broad mandate of the statute and consistent with legislative pronouncements regarding the intent of the Victim Protection Act. Encountering another type of victim harm, specifically identity theft, this Court held as follows in syllabus point three of *Rebecca F.*:

> W.Va. Code § 61-11A-4(a) [2006] contained in the *Victim Protection Act* of 1984, W.Va. Code § 61-11A-1 et seq. [1984], requires a circuit court, absent a finding of impracticality, to order a defendant convicted of a felony or misdemeanor causing psychological or *economic injury or loss* to a victim, to make restitution to

the victim of the offense. W.Va. Code § 61-11A-4 *does not contain specific factors* a circuit court should consider when formulating a restitution award to a victim who suffers psychological or *economic injuries* pursuant to W.Va. Code § 61-11A-4(a). Therefore, a circuit court formulating a restitution award to a victim who suffers psychological or *economic injuries* pursuant to W.Va. Code § 61-11A-4(a), should consider the factors set forth in W.Va. Code § 61-11A-5(a) [1984] of the *Victim Protection Act* of 1984. These factors include (1) *the amount of the loss sustained by the victim as a result of the offense*; (2) the financial resources of the defendant; (3) the financial needs and earning ability of the defendant and the defendant's dependents; and (4) such factors as the court deems appropriate.

233 W.Va. at 355, 758 S.E.2d at 559-60 (additional emphasis supplied). The defendant in *Rebecca F.* advanced an argument similar to that asserted by the Petitioner in the present case; she contended that the restitution award was not permissible under the explicit language of the statute. *Id.* at 358, 758 S.E.2d at 562. This Court rejected her contentions, however, explaining that "[b]ecause there was a clear showing of psychological and economic harm suffered by the victim, we find that the circuit court did not abuse its discretion in awarding restitution to the victim." *Id.* at 361, 758 S.E.2d at 565.

In assessing the "amount of the loss sustained by the victim as a result of the offense," as required by statute, the theft of the tractor weights in the present case clearly caused Mr. Moler to lose critical days of his seasonal planting. This is a verifiable monetary loss to the victim, based upon the value of the item as utilized by the victim in his business. We find reimbursement for the loss occasioned by the theft of the tractor weights is within the contemplation of the restitution statute. The concept of restitution for loss of use of stolen property is informed by principles underlying legal remedies for injury to other types of property interests. In syllabus point two of *Jarrett v. E. L. Harper & Son, Inc.*, 160 W.Va. 399, 235 S.E.2d 362

---

5.  *See supra* n. 2.

(1977), for instance, this Court addressed the appropriate measure of damages for injury to realty and explained:

> When realty is injured the owner may recover the cost of repairing it, plus his expenses stemming from the injury, *including loss of use during the repair period*. If the injury cannot be repaired or the cost of repair would exceed the property's market value, then the owner may recover its lost value, plus his expenses stemming from the injury *including loss of use during the time he has been deprived of his property*.

*Id.* at 399, 235 S.E.2d at 363 (emphasis supplied). Although *Jarrett* involved real property, this Court observed that the rule for measurement of damages "would be similar to the rule about damage to personal property." *Id.* at 404, 235 S.E.2d at 365; [6] *see also Cummings*, 214 W.Va. at 322, 589 S.E.2d at 53 (disallowing restitution based upon loss of wages incurred by victim while attending court proceedings, but remanding for further evaluation on issue of restitution for victim's interest on loan allegedly necessitated by criminal actions).

Also illustrative is the calculation of restitution in *People v. Thygesen*, 69 Cal.App.4th 988, 81 Cal.Rptr.2d 886 (1999). In that case, the California District Court of Appeal addressed the proper calculation of loss attributable to theft of a cement mixer from an equipment rental business, reasoning that the formula should involve "multipl[ing] the days lost by a reasonable rental rate." *Id.* at 890. The court also explained the variation in types of losses and attendant modes of restitution.

> Losses to victims *will vary from case to case*. For example, in a situation involving a victim who has a ring or necklace stolen, there may be no economic loss other than the actual value of the ring or necklace.

*The same is not true of a victim who is in business*. The economic loss may well include the *loss of revenue the stolen item would have produced*. We therefore hold that loss of use is a factor for the trial court to consider in making a victim whole....

*Id.* (emphasis supplied); *see also People v. Suttmiller*, 240 P.3d 504 (Colo. App. 2010) (restitution proper for rental value of asphalt roller because rental value was reasonable calculation of victim's losses occasioned by temporary loss of item).

■■■ As well-illustrated by the cases referenced above, the monetary damage occasioned by theft of a particular item is not necessarily limited solely to the cost of that item, particularly where reimbursement of the cost does not adequately compensate the victim for the loss of that item. In view of the statutorily-identified purposes of the restitution provisions in this State, we believe the circuit court's restitution order in this matter effectuates the intent of the legislature to provide full and fair restitution to victims of crime. The order is also consistent with the terms of the plea agreement entered into by the Petitioner. As Justice Ketchum aptly noted in his dissenting opinion in *State v. Atwell*, 234 W.Va. 293, 765 S.E.2d 182 (2014), where restitution is ordered as part of a plea bargain, "a deal is a deal" and the "restitution award was proper." *Id.* at 296, 765 S.E.2d at 185 (Ketchum, J., dissenting). The monetary ramifications of a crime must be recognized and considered in fashioning an order of restitution. We find the Petitioner's narrow interpretation of the statute's intent improperly restrictive, and we conclude that the circuit court properly identified the restitution amount owed to the victim in this case.

## B. Petitioner's Financial Considerations

■■ The Petitioner further contends the circuit court erred in failing to thoroughly

---

6. We note that some jurisdictions premise their restitution awards upon statutory language more precise than that contained in our statutes. In Oregon, for instance, the phrase "loss of use" is included in the governing statute, and reviewing courts have found it "likely that the legislature meant to address situations concerning temporary interference with or deprivation of property...." *State v. Islam*, 359 Or. 796, 377 P.3d 533, 537 (2016); *see also State v. Johnson*, 287 Wis.2d 381, 704 N.W.2d 625, 632 (Wis. App. 2005) (holding statute permits restitution for "special damages" that could be recovered in civil action for conversion, including lost profits from prospective sale of stolen computers); *Bullock v. Hass*, 280 Or. 501, 571 P.2d 902 (1977) (plaintiff in civil action entitled to loss of use damages, measured in lost profits, where defendant's fraud caused delivery truck to be out of commission for six weeks).

consider her limited financial resources in fashioning a restitution order. She argues she has responsibility for three minor children by two different fathers, neither of whom provide financial support. She further emphasizes she is unemployed and lives with her mother, relying on her mother and the government for financial support. She became pregnant in the ninth grade, has not obtained a GED, and was placed in special-education classes while she was in school. During the restitution hearing, the circuit court heard the Petitioner's testimony and considered her circumstances. Comparing the diligence of the victim and his farming business to the Petitioner's apparent lack of incentive to obtain gainful employment, the circuit court found that despite her current circumstances, the Petitioner is capable of gradually repaying the victim for his lost expenses.

We consider the Petitioner's assertions in light of the requirements of West Virginia Code § 61-11A-5 (2014). Pursuant to that statute, a court determining a restitution amount must consider the financial resources of the defendant and his or her dependents. West Virginia Code § 61-11A-5(a) provides as follows:

> The court, in determining whether to order restitution under this article, and in determining the amount of such restitution, shall consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such factors as the court deems appropriate.

■ In *Lucas*, this Court addressed that statute and explained that indigency is not necessarily determinative of the efficacy of a restitution order.[7] Syllabus point four of *Lucas* provides:

For purposes of determining whether or what amount of restitution may be entered as a judgment against a defendant at the time of a criminal defendant's sentencing pursuant to W.Va.Code, 61-11A-4(a) [1984], the indigency of a defendant or the current ability or inability of a defendant to pay a given amount of restitution is not necessarily determinative or controlling as to the practicality of an award of restitution. If the court determines that there is a reasonable possibility that a defendant *may be able to pay an amount of restitution*, the court, upon consideration and weighing of all pertinent circumstances, is permitted but not required to determine that an award of restitution in such an amount is practical.

201 W.Va. at 273-74, 496 S.E.2d at 223-24 (emphasis supplied). As this Court recognized in *Lucas*, there may be "circumstances in which an offender's present indigency or questionable ability to pay a given amount of restitution does not render a restitution award in such an amount necessarily impractical." *Id.* at 282, 496 S.E.2d 221 at 232.

> For example, a defendant may at the time of sentencing have no funds that would justify a circuit court's concluding that the defendant will definitely be able to pay restitution under the defendant's then-existing circumstances. Nevertheless, the court might conclude from evidence in the record that there is a reasonable possibility that such means or ability would arise in the future-for example, from a defendant's future earnings, a prospective inheritance, or other possible improvement in a defendant's fortunes.

*Id.*

The *Lucas* opinion also explains that restitution might be deemed unreasonable if it is beyond the offender's ability to pay without undue hardship to his family. *Id.* at 280, 496 S.E.2d 221 at 230. The Court in *Lucas* rea-

---

7. We also note the burden of proof for demonstrating the amount of loss suffered is set forth in West Virginia Code § 61-11A-5(d):

Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the prosecuting attorney. The burden of demonstrating the financial resources of the defendant and the financial needs of the defendant and such defendant's dependents shall be on the defendant. The burden of demonstrating such other matters as the court deems appropriate shall be ⁄upon the party designated by the court as justice requires.

soned that undue hardship would occur where "after the deduction of the [payment] from a person's wages enough money [does not] remain to meet ordinary and necessary expenses with something left over for unforeseen expenses and some discretionary spending." *Id.* (citations omitted). The holding in *Lucas* is consistent with prior decisions addressing the impact of a defendant's financial condition on the restitution decision. In *Fox v. State*, 176 W.Va. 677, 347 S.E.2d 197 (1986), for instance, this Court stated that a restitution payment would be considered unreasonable "if it is beyond the offender's ability to pay without undue hardship to himself or his family." *Id.* at 682, 347 S.E.2d at 202.

As articulated by the State and the circuit court in this case, the Petitioner is *not* incapable of working; yet she currently provides no support to her family, relying instead upon government assistance and support from her mother. The circuit court, appropriately guided by the presumption in favor of full and complete restitution, was careful to specify the factors it considered in determining the liability of the Petitioner for the victim's losses. The court found the Petitioner's earning ability is limited only by her lack of education, her drug addiction, and her failure to secure and maintain any employment during her adult life.[8] She presented no evidence to suggest she was in any manner disabled or incapable of employment.

In *Rebecca F.*, this Court affirmed a circuit court restitution order and quoted the United States Supreme Court's notable recognition concerning the rehabilitative goals of restitution:

> Restitution is an effective rehabilitative penalty because it forces the defendant to confront, in concrete terms, the harm his actions have caused. Such a penalty will affect the defendant differently than a tra-

ditional fine, paid to the State as an abstract and impersonal entity, and often calculated without regard to the harm the defendant has caused. Similarly, the direct relation between the harm and the punishment gives restitution a more precise deterrent effect than a traditional fine.

*Rebecca F.*, 233 W.Va. at 362, 758 S.E.2d at 566 (quoting *Kelly v. Robinson*, 479 U.S. 36, 49 n.10, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986)).

IV. Conclusion

Upon review by this Court, we find the circuit court thoroughly evaluated the Petitioner's financial situation in ordering her restitution payment. However, approximately three weeks after this case was argued on January 25, 2017, this Court received a letter from the Jefferson County Prosecuting Attorney's Office alerting this Court to an inadvertent misstatement by the prosecuting attorney during oral argument of this case. Specifically, the letter indicated that although the circuit court stated its intention to make restitution "joint and several between any of the co-defendants who are also convicted along with Ms. Bagent of this crime," the other co-defendants were never held jointly and severally liable with the Petitioner.[9] This Court is consequently compelled to remand this matter to the circuit court for evaluation of the issue of the monetary restitution to be paid by the Petitioner, given the apparent decision to abandon the circuit court's original intention to impose joint and several liability. Her ultimate liability for restitution should be premised upon her ability to pay without undue hardship, as addressed above, as well as a weighing of any other factors related to the fairness of the amount of restitution to by paid by one of many defendants and the considerations identified

---

8. The State presents this Court with a calculation indicating that if each co-defendant were to pay one third of the restitution amount, each would owe approximately $15,530.00. Thus, over a five year period of probation, the Petitioner would be responsible for approximately $3,100.00 per year, or $60.00 per week. According to the record, the Petitioner had not made any restitution payments from the April 20, 2015, conviction to the date the docket sheet was printed on April 20, 2016.

9. According to the letter faxed to this Court, "Calvin Harder, an alleged co-defendant, was convicted of daytime burglary and ordered to pay restitution of 1,022.67." Charges against two other alleged co-defendants, stemming from this crime, were dismissed.

in *Lucas.*[10] In all other respects, this Court affirms the findings of the circuit court, discerning no abuse of discretion and no violation of statutory or constitutional commands.[11] Thus, although this Court affirms the circuit court's decision to grant restitution, the portion of the order characterizing the Petitioner's restitution as "joint and several" was effectively vacated, based upon the fact that other defendants were not held jointly and severally liable with the Petitioner.

Affirmed, in part; vacated, in part; and remanded with directions.

---

**10.** By remanding this matter, this Court does not suggest that any particular monetary conclusion should be reached. That decision is within the discretion of the circuit court.

**11.** The Petitioner also raises a concern that she could potentially be incarcerated for failure to pay the required restitution. The State responds by denying that the threat of incarceration exists. In *Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983), the United States Supreme Court held that revocation of probation would be inappropriate solely for inability to pay, reasoning that a state is not permitted to subject a certain class of convicted defendants to the period of imprisonment solely due to inability to pay a fine. Thus, the State contends that incarceration would be justified in this case only if the Petitioner willfully refused to pay the restitution, without good cause for her inability. The State also posits that the Petitioner's argument regarding potential for incarceration is not mature for consideration by this Court in this appeal. She is not currently subject to a petition to revoke her probation. The State does note, however, that a court may be permitted to revoke the Petitioner's probation for failure to pay restitution if the State proved that she had failed to make sufficient bona fide efforts to seek employment in order to pay the restitution. We find the Petitioner's concerns too speculative to address at this juncture.