**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs.)  No. 20-0399** (Jefferson County 19-F-70)

**H.D.,**
**Defendant Below, Petitioner**

## MEMORANDUM DECISION

Petitioner H.D., by counsel Graham B. Platz, appeals from the Circuit Court of Jefferson County's June 23, 2021,[1] "Order Granting Restitution." The State of West Virginia, by counsel Patrick Morrisey and Andrea Nease Proper, filed a response in support of the circuit court's order. Petitioner filed a reply.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the order of the circuit court is appropriate under Rule 21 of the Rules of Appellate Procedure.

---

[1] Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *In re Jeffrey R.L.*, 190 W. Va. 24, 435 S.E.2d 162 (1993); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

This cases arises from petitioner's sexual abuse of his daughter, S.D.[2] Petitioner was indicted on ten counts: two counts of first-degree sexual assault; four counts of incest; and four counts of sexual abuse by a parent, guardian, or custodian. Petitioner initially pled not guilty.[3]

At a hearing on January 3, 2020, petitioner pled no contest to the indictment. He then accepted a binding plea agreement, whereby the State agreed to dismiss two counts of first-degree sexual assault and petitioner agreed to plead guilty to the remaining eight counts of the indictment. Per the plea agreement, petitioner was to receive an aggregate term of ten-to-twenty years of incarceration. The circuit court conducted a lengthy colloquy before accepting the plea. The State proffered that it could prove that petitioner sexually abused S.D. in various ways including inserting his finger into her vagina and performing oral sex on her. If the case went to trial, the State advised it would present evidence that petitioner had rubbed his penis against S.D. and that he penetrated her vagina with his penis on more than one occasion.

S.D.'s mother testified that petitioner had groomed S.D., telling her that her mother did not want her and wished to send her back to the foster care system. After the mother divorced petitioner, the mother noted that petitioner's abuse of S.D. increased. Further, the mother testified

---

[2] S.D.'s psychological records from 2014-2018 reflect that she was exhibiting depressive features and had been sending sexually inappropriate texts/photos to other individuals. Although S.D.'s intellectual functioning was in the superior to very superior range with an I.Q. of 134, she was suffering from depressive disorder and an unspecified impulse control disorder. The records revealed that in 2014, S.D. was living with her father and missing a significant amount school. During that same year, the records note that she was cutting herself and suffering from suicidal thoughts, yet petitioner failed to inform S.D.'s mother of these issues. During the pendency of the divorce and contentious custody proceedings, there was evidence that petitioner neglected S.D.'s physical and educational needs. In 2016, Child Protective Services ("CPS") launched two investigations into petitioner's physical abuse of S.D.'s sibling. As part of a protective order application in 2017, S.D. provided some of the allegations against petitioner, including that he forced her to touch his penis and forced her to have intercourse with him.

[3] During the pendency of the matter, the court held a hearing to determine the admissibility of evidence that petitioner sexually abused his other adopted daughter pursuant to Rule 404(b) of the West Virginia Rules of Evidence. Petitioner's other adopted daughter, K.D., then thirty-three years old, testified that petitioner sexually abused her throughout her childhood. Per K.D., petitioner forced her to perform oral sex on him when she was two or three years old, petitioner performed oral sex on her, and possibly penetrated her. K.D. testified that she had blocked out some memories of the abuse, yet testified that she was abused by petitioner until she was between twelve to fourteen years old. Per her testimony, she reported the abuse to a friend when she was in fourth grade and she believed an investigation occurred, but she did not know the result of the investigation. K.D. had only met her adopted sister S.D. once, approximately nine years before the July 2018 hearing, and she testified that they never discussed sexual abuse at that time. K.D. noted that she found out about petitioner's abuse of S.D. from the mother. The court ruled that a portion of K.D.'s testimony equating to one instance of sexual abuse, could be entered as evidence.

2

that although S.D. went to college, she had to take a break due to the pending criminal case and her depression. Per the mother, S.D. needed treatment, but was not yet ready to begin treatment. The mother further testified that she feared that S.D. would have troublesome relationships as a result of the abuse that she suffered from petitioner. K.D. also testified at the sentencing hearing that she began drinking at age twelve to dull the pain from petitioner's physical and sexual abuse. Per K.D., she then progressed to full blown drug addiction, but noted that she had been clean for three years prior to the hearing. Per K.D., she felt betrayed by her father for not only failing to protect her but also hurting her. K.D. testified that after significant mental health treatment, her mental health from the abuse was improving. The court's March 27, 2020, sentencing order noted that "[t]he victim, her mother, and K.D. provided statements to the court that detailed the considerable social, psychological, emotional, academic and developmental trauma suffered by the victim as a direct result of the egregious sexual acts of the [d]efendant against the victim."

Petitioner did not make any statements or call any witnesses at the sentencing hearing. The circuit court sentenced him to five to fifteen years of incarceration in the penitentiary on each of the four felony counts of incest. He was also sentenced to ten to twenty years of incarceration in a correctional facility for each sexual abuse by a parent, guardian, or custodian count. Pursuant to the plea agreement, all counts were to run concurrently. At the sentencing hearing, petitioner was asked by the court about his military pension. The court noted that the plea agreement included an obligation by petitioner to make restitution to S.D., and the court sought to begin restitution. The court found that S.D. had suffered irreparable harm that "manifested itself in addiction; manifested itself in depression; [and] ha[d] interfered with her education." Accordingly, the court ordered petitioner to pay S.D. $1,200 per month for the remainder of his sentence, plus an additional five years pursuant to West Virginia Code § 61-11A-4. The total amount of restitution ordered by the court was approximately $201,600. The court also ordered that should petitioner's child support obligations be reduced, then his restitution payments would be increased by an equal amount.

The procedural history of this matter is a bit convoluted. As the circuit court noted

[Petitioner] filed a notice of appeal arguing that the amount of restitution ordered was excessive and that it violated West Virginia Code § 61-11A-5.

After the filing of the notice of appeal, [petitioner] moved the Supreme Court of Appeals of West Virginia to hold his case in abeyance in order to file a motion to correct the illegal restitution sentence in the [c]ircuit [c]ourt. The State of West Virginia did not object and the Supreme Court granted [petitioner's] motion.

In December of 2020, petitioner moved to correct an illegal sentence, arguing that the amount of restitution that he was ordered to pay created an illegal sentence as it was "arbitrary" and not supported by the evidence. He also argued that the amount was not equal to the cost of necessary care. The court granted petitioner's request for a hearing on his motion and the propriety of the restitution award, and held a hearing in May of 2021. During this hearing, S.D.'s[4] counselor, Dr. Jennifer Myers, testified extensively. She indicated that S.D.'s counseling sessions were

---

[4] S.D. turned twenty years old on the day of the restitution hearing.

3

recommended to occur weekly at an out-of-pocket cost of $160 per session. Dr. Myers testified that she diagnosed S.D. with complex posttraumatic stress disorder ("PTSD"), major depressive disorder, and generalized anxiety disorder, which caused her significant impairment in daily functioning. Dr. Myers attributed all of these conditions to the abuse perpetrated on her by petitioner. Per Dr. Myers, the PTSD causes S.D. to have limited perspective, be hypervigilant, live in a constant state of fear, and distrust others. She noted that S.D. would be treated with multifaceted therapy; medications including sleep medication; alternative treatment such as exercise, massage, yoga, and acupuncture; and neurofeedback or biofeedback for several years. Due to S.D.'s hypervigilance and an inability to relax and sleep, Dr. Myers recommended alternative therapies such as massage, acupuncture, exercise, and yoga. Dr. Myers also testified that S.D. has trouble with her current office job, due to a lack of concentration and her struggles to attend work daily, and she had trouble following through with her college attempts.

Petitioner testified at the restitution hearing as to his military pension and financial obligations. Per his testimony, he receives a monthly pension of $1,750. After deductions from his pension to satisfy his financial obligations, petitioner testified that his net pay was $38.28 for April 2021, which he indicated was typical.[5]

---

[5] The circuit court found:

In response to his counsel's questions, [petitioner] testified that his monthly military pension of $1,750 is reduced by a VA waiver in the amount of $284.93, that he has state and federal tax withholdings of $10.00 and 77.81 respectively, that child support for his youngest child is withheld at $508, and that allotments for Tricare (medical insurance $50.50)[,] [d]ental insurance ($24.74), [v]ision care ($7.24)[,] Veterans Group Life Insurance ($247.50)[,] and USAA [life insurance] ($500) are deducted from his retired pay. His net pay for April, 2021, was $39.28, which is typical. [Petitioner] testified that the USAA account is used to pay taxes-presumably those owed to the state.

[Petitioner] offered no explanation as to why during the period of his incarceration he would need medical insurance, dental insurance, or vision care. Medical care is provided to individuals incarcerated in a West Virginia[] penitentiary.

As to the Veterans Group Life Insurance and USAA life insurance payments, [petitioner] testified that Rock Skowbo was his life insurance beneficiary. [Petitioner] admitted Rock Skowbo has no insurable interest in [petitioner] and is only a friend. [Petitioner] admitted that the sailing boat he was captured on in Florida belonged to Rock Skowbo.

[Petitioner] admitted that he was fully employed with the Berkeley County government as a software engineer before he fled. [Petitioner] admitted he was fully employed with Berkeley County while he was under indictment for felony sex crimes against a child.

4

Ultimately, the court entered an extensive order following petitioner's motion which addressed restitution on June 23, 2021. The court found Dr. Myers' report and testimony persuasive and noted that S.D. quit counseling and college due to the stress of petitioner's ongoing criminal case. Importantly, the court considered petitioner's monthly military pension and noted that he would not need to pay for medical insurance, dental insurance, or vision care during his incarceration. Further, the court noted that petitioner had two life insurance policies, for which he pays $247.60 and $500 per month. However, the life insurance beneficiary is petitioner's friend who allowed petitioner to hide out on his boat when he absconded to Florida during the pendency of these proceedings, and the friend has no insurable interest in petitioner's life.

The court found S.D. suffered significant harm as a result of the sexual abuse by petitioner. The court calculated that petitioner has $1,210.21 of potential disposable income from which $508 is taken per month for child support, leaving $702.21. The court also found that petitioner's claim that he had only $39.28 in income was the result of petitioner "diverting his funds in an effort to avoid paying this restitution."

The court found that the State provided estimates for restitution costs and had met its burden of proving the victim's expenses. Specifically, the court found:

> The State requested the [c]ourt order restitution in the amount of $195,160.00 for S.D. Support for ordering this amount is contained within the State's amended request for restitution and State's Exhibits 1 and 2. Restitution for S.D. is for payment of psychological services, prescriptions, psychiatric service, and treatment services, and transportation. The Court finds that the State was conservative in its estimation of costs taking mostly the lower estimated costs into its calculation.

> The Court finds by a preponderance of evidence that the State has proven the victim, S.D., will have expenses of $13,940 per year for psychological services, prescriptions, psychiatric services, alternative treatment services, and transportation to those services. This amount is comprised of the following: [t]herapy with counselor, $160.00 per weekly session; prescriptions $1,200 per year; [y]oga, $15.00 per week; [m]assage therapy, or in the alternative, acupuncture, $60.00 per week; transportation to appointments, $10.00 per week. The State has requested this yearly amount be paid for 14 years of services for a total of $195,160.00.

Accordingly, the court ordered petitioner to pay restitution to S.D. in the amount of $195,160 for "medical, psychiatric, psychological, and therapy treatment, and prescription and transportation costs the need of which resulted from the crimes committed by [petitioner]." The court noted that it reached this amount after considering petitioner's finances, his earning potential, and the needs of the victim. The court further ordered petitioner to cease payments on life insurance policies benefitting his friend until all restitution had been paid.

Petitioner appeals from the restitution order, arguing that the court abused its discretion because the restitution award was an arbitrary award of future unrealized costs that were unsupported by the evidence and were in excess of the cost of the victim's necessary care.

"'The Supreme Court of Appeals reviews sentencing orders, including orders of restitution made in connection with a defendant's sentencing, under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands.' Syl. Pt. 1, *State v. Lucas*, 201 W.Va. 271, 496 S.E.2d 221 (1997)." Syl. Pt. 1, *State v. Bagent*, 238 W. Va. 736, 798 S.E.2d 862 (2017).

Citing established jurisprudence, the *Bagent* Court further noted that,

> "[u]nder W.Va. Code, 61-11A-1 through -8 and the principles established in our criminal sentencing jurisprudence, the circuit court's discretion in addressing the issue of restitution to crime victims at the time of a criminal defendant's sentencing is to be guided by a presumption in favor of an award of full restitution to victims, unless the circuit court determines by a preponderance of the evidence that full restitution is impractical, after consideration of all of the pertinent circumstances, including the losses of any victims, the financial circumstances of the defendant and the defendant's family, the rehabilitative consequences to the defendant and any victims, and such other factors as the court may consider." Syl. Pt. 3, *State v. Lucas*, 201 W.Va. 271, 496 S.E.2d 221 (1997).

*Bagent*, 238 W. Va. at 736, 798 S.E.2d at 863, Syl. Pt. 3.

Restitution is specifically authorized by West Virginia Code § 61-11A-4(a), which provides that

> [t]he court, when sentencing a defendant convicted of a felony or misdemeanor causing physical, psychological, or economic injury or loss to a victim, shall order, in addition to or in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of the offense to the greatest extent economically practicable when considering the defendant's financial circumstances.

Additionally, West Virginia Code § 61-11A-5(a) provides a procedure for issuing a restitution order.[6] Specifically, it provides that

---

[6] Further, West Virginia Code § 61-11A-5(d) dictates how disputes as to restitution should be resolved:

> Any dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the prosecuting attorney. The burden of demonstrating the financial resources of the defendant and the financial needs of the defendant and such defendant's dependents shall be on the defendant. The burden of demonstrating such other matters as the court deems appropriate shall be upon the party designated by the court as justice requires.

[t]he court, in determining whether to order restitution under this article, and in determining the amount of such restitution, shall consider the amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant and the defendant's dependents, and such factors as the court deems appropriate.

Here, the court considered the loss sustained by the victim, petitioner's financial resources, and his financial needs and earning ability. Further, the court heard expert testimony as to the victim's needs as a result of petitioner's conduct and based the restitution on the cost of necessary care to meet those needs. Applying our deferential abuse of discretion standard, we refuse to disturb petitioner's restitution order, which the court ordered after following the procedure as set forth by West Virginia Code.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** May 26, 2022

**CONCURRED IN BY:**

Chief Justice John A. Hutchison
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice William R. Wooton

**NOT PARTICIPATING:**

Justice C. Haley Bunn

7