**State of West Virginia,**
**Plaintiff below, Respondent,**

**v.) No. 23-588** (Jefferson County 22-F-11)

**Willie Edward Belmonte, Jr.,**
**Defendant below, Petitioner.**

**FILED**

**March 12, 2026**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

The petitioner,[1] Willie Edward Belmonte, Jr., was a teacher at Jefferson High School. He was indicted in a twenty-nine count indictment related to his sexual misconduct against one of his students, L.B., who was then a minor.[2] The petitioner pled guilty to eight counts of sexual abuse by a person in a position of trust, three counts of use of obscene matter with intent to seduce a minor, and two counts of solicitation of a minor via a computer and engaging in an overt act. The petitioner previously appealed his conviction and sentence to this Court claiming his plea was involuntary and his sentence was disproportionate.[3] We affirmed. *State v. Belmonte*, No. 23-65, 2025 WL 452666 (W. Va. Feb. 11, 2025) (memorandum decision). The petitioner's present appeal challenges the circuit court's September 12, 2023, order of restitution which we now also affirm.

Under the plea agreement, "[t]he petitioner agreed to be 'responsible for restitution.'" *Belmonte*, 2025 WL 452666, at *1 n.3. The plea agreement provided:

> [The petitioner] is responsible for restitution. [The petitioner] will be ordered to pay restitution through the Jefferson County Circuit Clerk to the victim and/or any person or entity that already paid or will pay for any expenses that can be considered as restitution.

The Presentence Investigation Report stated that L.B.'s parents claimed a total loss of $6,954.00, some of which were for wages that L.B.'s parents lost to attend court proceedings and for expenses incurred in taking L.B. to counseling.

At the plea hearing, the circuit court directed the parties to ascertain if they could agree on a restitution amount but, if they were unable to do so, the circuit court indicated it would set a

---

[1]The petitioner appears by counsel Olivia M. Lee. The respondent State of West Virginia appears by Attorney General John B. McCuskey and Assistant Attorney General Mary Beth Niday.

[2]We use initials to protect L.B.'s privacy. *See* W. Va. R. App. P. 40(e)(1).

[3]The petitioner's sentence was effectively 23.5 to 75 years of incarceration with fifty years of supervised release.

1

restitution hearing. The parties were unable to do so, and the circuit court held a hearing on June 12, 2023. At this restitution hearing, the circuit court was alerted that the Crime Victims Compensation Fund (the Fund) had paid for tutoring services for L.B. At the end of that hearing the circuit court did not rule but directed the parties to submit briefs on the restitution issues.

On July 18, 2023 (ten days before the submission of the petitioner's restitution brief), the State filed a supplemental restitution request seeking, in addition to the $6,954.00 it had already requested, an additional $8,917.54 to be paid to the Fund for amounts the Fund had paid for L.B.'s tutoring expenses. This request included documentary evidence supporting the $8,917.54 including orders, memoranda, and loss analysis from the West Virginia Legislative Claims Commission (the Commission), the Fund administrator.

On July 28, 2023, the petitioner submitted his circuit court brief arguing that the Victim Protection Act's[4] restitution provision, W. Va. Code § 61-11A-4, only allows a victim to seek restitution and, in this case, only L.B.—and not her family—was the victim of a crime. The petitioner also asserted that pursuant to *State v. Cummings*, 214 W. Va. 316, 589 S.E.2d 48 (2003) (per curiam), the Victim Protection Act does not authorize restitution for a loss of wages due to attending court proceedings. The petitioner finally argued that while an award to the Fund was statutorily authorized by the Victim Protection Act, "to issue such an order without the [petitioner] first being able to examine and cross-examine supporting evidence for the tutoring costs violates his 14th Amendment Right to a hearing as none of this evidence was available prior to or at his restitution hearing held before the this [sic] [c]ourt on June 12, 2023."

In its July 28, 2023, brief to the circuit court, the State conceded *Cummings* precluded an award of lost wages to L.B.'s parents for attending court proceedings. As such, the State reduced its restitution request by $4,864.70. Otherwise, it stood by its restitution requests.

On September 12, 2023, the circuit court entered an order granting restitution to L.B.'s parents in the amount of $2,089.30 for lost wages and mileage due to medical reasons or to obtain immediate protection for L.B. The circuit court justified its awarding of this restitution under, *inter alia*, West Virginia Code § 61-11A-4(e) which provides:

> The court shall not impose restitution with respect to a loss for which the victim has received or is to receive compensation from a third party: Provided, That the court may, in the interest of justice, order restitution to any person who has compensated the victim for loss to the extent that the person paid the compensation. An order of restitution shall require that all restitution to victims under the order be made before any restitution to any other person under the order is made. As used in this section, the term "any person who has compensated the victim for loss" shall include the West Virginia Crime Victims Compensation Fund.

The court ruled in this regard that:

---

[4]*See* W. Va. Code § 61-11A-1 to -9. The Victim Protection Act included eight sections when passed in 1984. In 2019, the Legislature added a ninth section, the Sexual Assault Victims' Bill of Rights.

[T]he [c]ourt could also consider the parents of the victim as a "third party." The [c]ourt may, in the interest of justice, order restitution to any person who has compensated the victim for loss. The parents have done so in this case. If a court can order a defendant to pay restitution to an insurance company who paid a victim,[5] it, of course, can order restitution to a parent who has sustained an economic loss to care for their child caused by [the petitioner's] crimes.

The circuit court additionally awarded the Fund $8,917.54 for L.B.'s tutoring costs. The circuit court found that "[o]n July 18, 2023, the State provided [the petitioner] 30 documents in support of the Crime Victim[s] Compensation Fund award. The State provided the [c]ourt a copy of those documents. The [c]ourt has reviewed those documents and finds that the State proved the expenses by a preponderance of the evidence." This appeal followed.

After consideration of the parties' briefs and oral argument, as well as pertinent legal authorities, we find no substantial question of law and no prejudicial error in this case and, therefore, conclude that a memorandum decision affirming the circuit court's restitution order is appropriate. *See* W. Va. R. App. P. 21.

### STANDARD OF REVIEW

Our standard of review is set forth in Syllabus Point 1 of *State v. Lucas*, 201 W. Va. 271, 496 S.E.2d 221 (1997):

> The Supreme Court of Appeals reviews sentencing orders, including orders of restitution made in connection with a defendant's sentencing, under a deferential abuse of discretion standard, unless the order violates statutory or constitutional commands.

### RESTITUTION TO THE PARENTS

We begin with the petitioner's claim that the circuit court's restitution award to L.B.'s parents was erroneous. We disagree.

"Restitution is, essentially, compensation for losses suffered as a result of a crime." *United States v. Thomas*, 635 F.3d 13, 21 (1st Cir. 2011). The Petitioner, in his plea agreement, agreed to be responsible for restitution. *Belmonte*, 2025 WL 452666, at *1 n.3. "[W]here restitution is ordered as part of a plea bargain, 'a deal is a deal' and the 'restitution award was proper.'" *State v. Bagent*, 238 W. Va. 736, 742, 798 S.E.2d 862, 868 (2017) (quoting *State v. Atwell*, 234 W. Va. 293, 296, 765 S.E.2d 182, 185 (2014) (Ketchum, J., dissenting)).

The plea agreement in this case specifically provided that

---

[5]*See State v. Wasson*, 236 W. Va. 238, 778 S.E.2d 687 (2015).

[The petitioner] is responsible for restitution. [The petitioner] will be ordered to pay restitution through the Jefferson County Circuit Clerk to the victim and/or any person or entity that already paid or will pay for any expenses that can be considered as restitution.

The language of the agreement employed language like that contained in West Virginia Code § 61-11A-4(e), which authorizes the restitution the circuit court ordered to the parents. Under West Virginia Code § 61-11A-4(e), "the court may, in the interest of justice, order restitution to any person who has compensated the victim for loss to the extent that the person paid the compensation." In the present case, the circuit court concluded that it was in the interest of justice to award the parents the funds they expended on behalf of their daughter for her health and safety as they were necessitated by the petitioner's egregious criminal behavior towards her. The circuit court was within its discretion to do so given the "broad mandate" of the Victim Protection Act, *Bagent*, 238 W. Va. at 741, 798 S.E.2d at 867, as recognized in Syllabus Point 3 of *State v. Lucas*, 201 W. Va. 271, 496 S.E.2d 221 (1997):

> Under W. Va. Code, 61-11A-1 through -8 and the principles established in our criminal sentencing jurisprudence, the circuit court's discretion in addressing the issue of restitution to crime victims at the time of a criminal defendant's sentencing is to be guided by a presumption in favor of an award of full restitution to victims, unless the circuit court determines by a preponderance of the evidence that full restitution is impractical, after consideration of all of the pertinent circumstances, including the losses of any victims, the financial circumstances of the defendant and the defendant's family, the rehabilitative consequences to the defendant and any victims, and such other factors as the court may consider.

## RESTITUTION TO THE FUND

We next turn to the petitioner's assertion that he was denied due process because the circuit court did not conduct a live hearing on the State's restitution request regarding the Fund. We conclude this assertion to be meritless as well.

Admittedly, restitution is part of the sentence in a criminal case and, as such, proceedings to determine restitution are certainly subject to due process sentencing requirements. *Gardner v. Florida*, 430 U.S. 349, 358 (1977) ("[I]t is now clear that the sentencing process, as well as the trial itself, must satisfy the requirements of the Due Process Clause."). But due process does not necessarily bar a court from relying on hearsay information in sentencing a defendant. "[O]nce the guilt of the accused has been properly established, the sentencing judge, in determining the kind and extent of punishment to be imposed, is not restricted to evidence derived from the examination and cross-examination of witnesses in open court but may, consistently with the Due Process Clause of the Fourteenth Amendment, consider responsible unsworn or 'out-of-court' information[.]" *Williams v. Oklahoma*, 358 U.S. 576, 584 (1959) (citing *Williams v. New York*, 337 U.S. 241 (1949)). We additionally recognize that not all hearsay is admissible at sentencing; rather, "due process requires that some minimal indicia of reliability accompany a hearsay statement offered at sentencing." 16C C.J.S. *Constitutional Law* § 1746 at 465 n.3 (2015). We conclude this low due process threshold was satisfied in this case.

4

These standards have specifically been applied to restitution proceedings. "In calculating a victim's losses [for restitution] . . . courts can rely on any evidence 'bearing "sufficient indicia of reliability to support its probable accuracy."'" *United States v. Baston*, 818 F.3d 651, 665 (11th Cir. 2016) (citations omitted). Consequently, "[trial] courts are not required to hear live testimony at every restitution hearing[,]" *id.*, as "evidence can be sufficiently reliable for restitution purposes even where it is not subject to cross-examination." *United States v. Williams*, 319 F. Supp. 3d 812, 816 (E.D. Va. 2018), *aff'd*, 783 F. App'x 269 (4th Cir. 2019); *see also Commonwealth v. Casanova*, 843 N.E.2d 699, 705 (Mass. Ct. App. 2006) ("[H]earsay, if reliable, is admissible to carry the Commonwealth's burden at a restitution hearing."). We review a circuit court's choice of procedures to determine restitution for abuse of discretion, *United States v. Minneman*, 143 F.3d 274, 286 (7th Cir. 1998), which is likewise the standard of review applicable to the circuit court's decision that sentencing hearsay is reliable. *United States v. Leyva*, 916 F.3d 14, 25 (D.C. Cir. 2019). The circuit court did not abuse its discretion in this case.

The State submitted to the circuit court a supplemental request for restitution to the Fund on July 18, 2023. Supporting this request was a series of memoranda from a Commission Investigator recommending that the Fund award tutoring expenses to L.B.'s mother because such expenses qualify as replacement services. These documents additionally included a series of "Economic Loss Analysis" sheets detailing the amounts that L.B.'s mother sought from the Fund. Also included among the documents were orders from the Presiding Commissioner of the Commission granting the requested sums, which totaled $8,917.54. The documents carried sufficient indicia of reliability to satisfy due process as they bore the imprimatur of an investigator and the Presiding Commissioner of the Commission, both independent evaluators of the mother's requests. *See People v. Camacho*, No. B210546, 2010 WL 1493178, at *11 (Cal. Ct. App. Apr. 15, 2010) ("Here, the documentation submitted by the prosecution was detailed as to the restitution amount and keyed to the victim in the underlying offense. Moreover, the computerized printout contained an itemization by an independent government agency, the State Board of Control, showing the specific amount paid on behalf of Elizalde's mother. That certainly amounts to reliable information for restitution purposes."). Consequently, the circuit court did not deny the petitioner due process in ordering his payment of restitution to the Fund.

For the foregoing reasons, the September 12, 2023, order of the Circuit Court of Jefferson County, West Virginia is affirmed.


**ISSUED:** March 12, 2026

**CONCURRED IN BY:**
Chief Justice C. Haley Bunn
Justice William R. Wooton
Justice Charles S. Trump IV
Justice Thomas H. Ewing
Justice Gerald M. Titus III